## PEOPLE v GATES

Docket No. 83363. Argued May 2, 1989 (Calendar No. 7). Decided
March 5, 1990. Certiorari denied by the Supreme Court of the
United States on June 25, 1990, 497 US — (1990).

Gregory S. Gates was charged in the Jackson Circuit Court with
second-degree criminal sexual conduct involving his minor
daughter. The court, Russell E. Noble, J., dismissed the charge
on the ground that a jury verdict of no jurisdiction in a
Jackson County Probate Court child protective proceeding,
which was based on the same facts alleged in the circuit court
proceeding, determined that the prosecution had not proven a
case of sexual abuse by a preponderance of the evidence,
precluding prosecution of the defendant. The jury in the pro-
bate court proceeding had been instructed that the issue it was
to decide was whether the child came within the jurisdiction of
the probate court and that a child comes within jurisdiction of
the court if the child's home or environment is unfit by reason
of neglect, cruelty, criminality or depravity on the part of a
parent. The Court of Appeals, MAHER, P.J., and SHEPHERD and
K. TERTZAG, JJ., affirmed in an opinion per curiam (Docket No.
98229). The people were granted leave to appeal, limited to the
issue whether, in view of the probate court proceedings, princi-
ples of collateral estoppel prohibited the subsequent prosecu-
tion of the defendant.

In an opinion by Justice GRIFFIN, joined by Chief Justice
RILEY and Justices BRICKLEY, BOYLE, and ARCHER, the Supreme
Court held:

Because the issue of the defendant's criminal guilt or inno-
cence was not necessarily decided in the prior proceedings in
the probate court, principles of collateral estoppel do not pro-
hibit the subsequent prosecution of the defendant.

1. Collateral estoppel precludes relitigation of an issue in a
subsequent, different cause of action between the same parties

REFERENCES
Am Jur 2d, Criminal Law §§ 324-326, 328, 333; Infants § 16.
See the Index to Annotations under Abuse of Persons; Acquittal;
Collateral Estoppel; Juvenile Courts and Delinquent Children;
Probate Courts and Proceedings.

where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined. There is no set formula for determining whether relitigation of an issue is precluded by collateral estoppel. A critical factor in applying collateral estoppel is the determination of whether the litigants were parties or privy to a party in an action in which a valid judgment was rendered. In this case, a functional analysis of the role of the prosecutor in both proceedings leads to the conclusion that privity is sufficient to satisfy the same-party requirement.

2. The issue of the defendant's alleged sexual abuse of his daughter was the factual focus of the jury trial in the probate court. Even assuming arguendo that the issue was fully litigated, however, it falls short of the requirement that his guilt or innocence necessarily be determined. An issue is necessarily determined only if it is essential to a judgment. In order for collateral estoppel to operate as a bar to a subsequent prosecution, the jury in the earlier proceeding necessarily must have determined that the defendant was not guilty of the offense charged.

3. The inability of a court to determine upon what basis an acquitting jury reached its verdict, is, by itself, enough to preclude the defense of collateral estoppel. Collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally. A verdict may conclusively determine certain issues by implication. In this case, had the jury in the probate proceeding found that the probate court had jurisdiction of the child, that verdict necessarily would have determined that the defendant had engaged in the conduct alleged. But because a finding of innocence was not essential to a verdict of no jurisdiction, the verdict did not necessarily determine the issue of criminal guilt or innocence.

4. The purpose, and focus, of a child neglect or abuse proceeding in a probate court is the protection of the child. In contrast, the focus of a criminal proceeding is on the guilt or innocence of the accused. Even though the interests of a child may be affected, such interests are not taken into account in determining whether an accused is guilty of a criminal charge. The disparate purposes of the two types of proceedings argue strongly against the application of collateral estoppel. Even if it is assumed that the quality and extensiveness of the procedures followed by the probate court and the circuit court are comparable, the competence of the probate court to conclusively determine in a child protective proceeding the criminal guilt or innocence of an accused is necessarily compromised by the

appropriate focus of the probate court on the protection of children.

5. In this case, because the issue of the defendant's criminal guilt was not necessarily decided in the prior proceedings in the probate court, the principles of collateral estoppel do not prohibit the prosecution of the defendant.

Reversed and remanded.

Justice LEVIN, joined by Justice CAVANAGH, dissenting, stated that the Court of Appeals did not err in concluding that this prosecution is barred by the doctrine of collateral estoppel. The entire record in the probate proceeding should be assessed in deciding whether the verdict of no jurisdiction constituted a determination by the jury that the defendant had not sexually abused his daughter. That decision cannot properly be premised on a construction of a single sentence in the instructions viewed in the abstract, separate and apart from the entire record.

The language of the jurisdiction statute and the phrasing of the instructions reflect recognition that some acts of criminal misconduct might not render a home unfit for a child. The jury was thus properly instructed that whether a parent's violation of the criminal law renders the home or environment of the child an unfit place for the child is for the jury to decide upon the basis of all the evidence in the case. There was, however, no evidence or argument, separate and apart from the evidence tending to show that the defendant had committed the act of sexual abuse and the evidence to the contrary, focusing on or tending to show whether the home or environment was or was not fit. Because no evidence was introduced focusing on whether the home was fit, even were the jury to find that the criminal conduct alleged in fact occurred, the majority's assertion that factors other than the defendant's guilt or innocence may have been the basis of the verdict of no jurisdiction is tenuous at best.

In deciding whether an issue of fact was actually litigated and determined, a court should assess the entire record and decide the question on the basis of the probabilities and not possibilities. Where the trier of fact/court renders alternative determinations of fact or law, either of which would have supported the earlier judgment, neither determination is essential to the judgment. Where, however, only one issue is litigated, only one issue could have been determined, and ordinarily there is no reason to suppose that another issue, not litigated, was determined or was determinative. In this case, the only issue that was litigated was whether the defendant

had sexually abused his daughter. The overwhelming probability is that that was the factual issue determined by the jury, when it rendered its verdict. The people failed to convince the jury of the defendant's guilt. He should not be subjected to relitigation of the same basic issue—whether he sexually molested his daughter—in a criminal prosecution.

This case demonstrates that a function of the probate court proceeding may in fact be to determine whether a parent engaged in criminal misconduct with respect to a child. Where the probate court petition is based solely on an allegation of parental criminal misconduct with respect to the child, the fate of both the child and the parent are inextricably tied to the determination of the parent's guilt or innocence. The probate court cannot act to protect the child by acquiring jurisdiction of the child, unless the jury finds that the parent is guilty of the criminal misconduct respecting the child charged in the petition. Where sexual abuse is charged, the purpose sought to be achieved by initiating the abuse/neglect proceeding can only be realized upon a finding by the jury that the parent did in fact commit the charged act of criminal misconduct respecting the child.

In an abuse/neglect proceeding, various considerations may inform the jury's verdict. The application of the doctrine of collateral estoppel in a particular case does not, however, depend on what may occur in another case. It depends on what occurred in the particular case. In this case, the only issue pled, litigated, and submitted to the trier of fact was the defendant's guilt or innocence. No evidence bearing on any other issue was provided for the jury's consideration. Collateral estoppel effect should not be denied where there is issue identity, where only one issue was pled, litigated, and submitted to the jury, because in another case more than one issue might be litigated or because there is in theory a difference in the primary purposes of the two proceedings.

168 Mich App 384; 423 NW2d 668 (1988) reversed.

1. CRIMINAL LAW — PROBATE COURT — CHILD PROTECTIVE PROCEEDINGS — COLLATERAL ESTOPPEL.

Where the issue of a defendant's criminal guilt or innocence is not necessarily decided in a prior child protective proceeding in probate court, principles of collateral estoppel do not prohibit the subsequent prosecution of a defendant.

2. CRIMINAL LAW — COLLATERAL ESTOPPEL — SUBSEQUENT PROSECUTION.

Collateral estoppel precludes relitigation of an issue in a subse-

quent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was actually litigated and necessarily determined.

3. CRIMINAL LAW — COLLATERAL ESTOPPEL.

The inability of a court to determine upon what basis an acquitting jury reached its verdict, is, by itself, enough to preclude the defense of collateral estoppel; collateral estoppel applies only where the basis of the prior judgment can be ascertained clearly, definitely, and unequivocally.

4. CRIMINAL LAW — PROBATE COURT — CHILD PROTECTIVE PROCEEDINGS — COLLATERAL ESTOPPEL.

The purpose, and focus, of a child neglect or abuse proceeding in a probate court is the protection of the child; in contrast, the focus of a criminal proceeding is on the guilt or innocence of the accused; the disparate purposes of the two types of proceedings argue strongly against the application of collateral estoppel; even if it is assumed that the quality and extensiveness of the procedures followed by the probate court and the circuit court are comparable, the competence of the probate court to conclusively determine in a child protective proceeding the criminal guilt or innocence of an accused is necessarily compromised by the appropriate focus of the probate court on the protection of children.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Joseph S. Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Chief Appellate Attorney, for the people.

*Nicholas Smith* for the defendant.

Amicus Curiae:

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert H. Cleland,* Prosecuting Attorney, and *Susan L. LeDuc,* Assistant Prosecuting Attorney, for the Prosecuting Attorneys Association of Michigan.

GRIFFIN, J. In view of a jury verdict of "no jurisdiction" in a child protective probate proceed-

ing, we are asked to determine whether the doc-
trine of collateral estoppel bars subsequent prose-
cution of the defendant for criminal sexual con-
duct where the factual allegations against defen-
dant in both proceedings are essentially the same.
Because the prior probate court verdict did not
necessarily determine the guilt or innocence of the
defendant, we hold that the principles of collateral
estoppel do not apply.

I

In February, 1986, the Michigan Department of
Social Services petitioned the juvenile division of
the Jackson County Probate Court to take jurisdic-
tion of a child, then three years and ten months
old, on the basis of allegations that defendant, her
father, had sexually abused her.[1] The petition

---

[1] The initial petition read:

On or about 02-13-86, [the child] was interviewed by peti-
tioner. During this interview, [she] stated that her father had
touched her "pee pee real hard." While stating this, [she]
showed petitioner what she meant by placing both of her hands
on her vaginal area. [She] further illustrated this while using
the sexually explicit dolls by placing the adult male doll's hand
on her . . . vaginal area. [She] stated that when this occurred,
she had no clothes on.
    [She] further revealed that she had not told her mother of
her father's actions because she was afraid of what her father
would do.

After the petition was filed, the DSS was represented by the Ingham
County Prosecutor, who was allowed to amend the petition to add:

It is also alleged that: This touching by the father could be
reasonably construed as being for purposes of sexual arousal or
gratification.

The petition referred to MCL 712A.2; MSA 27.3178(598.2). As
amended, the allegations fell within the scope of MCL 712A.2(b)(2);
MSA 27.3178(598.2)(b)(2), which at the time provided:

Except as otherwise provided in this section, the juvenile
division of the probate court shall have:

initiated child protective proceedings, the adjudicative phase of which leads to a determination of whether statutory grounds exist for juvenile court jurisdiction.[2] If such grounds are found to exist and the court assumes jurisdiction, dispositional proceedings are conducted thereafter to determine what action, if any, should be taken with respect to the child. MCR 5.961 *et seq.*

At the time the petition was filed in probate court, the defendant father had been divorced from the child's mother for a period of two months. Although the child lived with her mother, defendant had been awarded joint custody of the child from the date of the couple's legal separation in February, 1985, and prior to the filing of the petition, he had physical custody of the child every weekend. However, following the filing of the petition, unsupervised visitations by the child in the home of her father were suspended.

Defendant contested the petition and requested a jury trial.[3] After the petition was filed, but prior to the jury trial held in probate court, the prosecuting attorney, who represented the DSS in the probate proceeding, filed a criminal complaint and warrant in the Jackson Circuit Court, charging defendant with second-degree criminal sexual con-

* * *

(b) Jurisdiction in proceedings concerning any child under 17 years of age found within the county:

* * *

(2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, or other custodian, is an unfit place for such child to live in.

[2] The statutory grounds for juvenile court jurisdiction are found in MCL 712A.2; MSA 27.3178(598.2).

[3] See MCL 712A.17; MSA 27.3178(598.17); also MCR 5.971(B). The child's mother did not oppose the petition.

duct, on the basis of the same facts alleged in the probate court petition.[4]

In the probate court trial which took place on June 16 and 17, 1986, the testimony dealt almost exclusively with the allegations of sexual abuse.[5] At the close of the trial, the probate court instructed the jury that the issue it was to decide was whether the child came within the jurisdiction of the court. The jury was further instructed that a child comes within the jurisdiction of the court if the child's home or environment is unfit for the child by reason of neglect, cruelty, criminality, or depravity on the part of a parent.

The jury was given a verdict form which allowed it to check off one of two verdicts: jurisdiction, or no jurisdiction. The jury returned a verdict of "no jurisdiction."

The judge then asked the jury, "Do you say upon your oath that you find the minor . . . is not

---

[4] The criminal complaint alleged that defendant had violated MCL 750.520c(1)(a); MSA 28.788(3)(1)(a), which provides:

> (1) A person is guilty of criminal sexual conduct in the second degree if the person engages in sexual contact with another person and if any of the following circumstances exists:
> (a) That other person is under 13 years of age.

As defined by MCL 750.520a(k); MSA 28.788(1)(k), "sexual contact" includes "the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification."

[5] The child testified that defendant touched her "hard" in the vaginal area, causing pain, once while she was sleeping in a living room chair, and that defendant told her not to tell her mother. She testified that defendant touched her "about five [other] times." Karen DuPage, a family therapist, testified that she interviewed the child upon request of the Department of Social Services and that, in her opinion, the child had been molested by her father on a number of different occasions. Defendant took the stand and denied touching his daughter for any improper reason or abusing her in any way, although he admitted innocently touching her vaginal area at times when helping her use the bathroom or take a bath.

a neglected minor in the manner and form as the People have in their information in this cause charged?" Each of the jury members responded affirmatively.

On July 28, 1986, the probate judge granted a motion for judgment notwithstanding the verdict, and then ordered a new trial. However, the Jackson Circuit Court subsequently reversed, reasoning that the jury verdict deprived the probate judge of jurisdiction to grant such relief.

Thereafter, the Jackson Circuit Court dismissed the criminal charges against defendant on the ground that the jury verdict in probate court determined "that the prosecution had not proved a case of sexual abuse by a preponderance of the evidence." The Court of Appeals affirmed. 168 Mich App 384; 423 NW2d 668 (1988). We then granted leave to appeal, limited to the issue whether, in view of the prior proceedings in probate court, principles of collateral estoppel prohibited the subsequent prosecution of defendant.[6] 431 Mich 904 (1988).

II

Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated, and (2) necessarily determined.[7] *Jacobson v Miller*, 41 Mich 90, 93; 1

---

[6] In this appeal we are not required to consider whether defendant's prosecution is barred by the Double Jeopardy Clause of the United States Constitution. US Const, Ams V, XIV.

[7] We use the term "collateral estoppel" to refer to issue preclusion. This Court generally uses the term "res judicata" to refer to what is often called "claims preclusion," which covers the preclusive effect of a judgment upon a subsequent proceeding on the basis of the same cause of action. *Jones v Chambers*, 353 Mich 674; 91 NW2d 889 (1958).

NW 1013 (1879); *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42; 191 NW2d 313 (1971); Restatement Judgments, § 68, p 293. 1 Restatement Judgments, 2d, § 27, p 250.[8]

We believe it is important at the outset to recognize that in the body of case law applying this principle the vast majority of cases involve the applicability of collateral estoppel where there are two civil proceedings. Cases involving "cross-over estoppel," where an issue adjudicated in a civil proceeding is claimed to be precluded in a subsequent criminal proceeding, or vice versa, are relatively recent and rare.[9]

A

There is no set formula for determining whether relitigation of an issue is precluded by collateral estoppel. Initially it is necessary, according to the First Restatement of Judgments, to establish that the same parties are involved in both proceedings.[10] This Court last affirmed the "same party" requirement in *Howell, supra* at 42, wherein we

[8] The Second Restatement is limited to the effect of prior adjudications in civil litigation, and does not deal with the effect of a prior civil judgment in a subsequent criminal prosecution. The ensuing citations to the Second Restatement are made with this observation in mind.

[9] We borrow the efficient term "cross-over estoppel" from Brenner, *"Crossing-over:" The issue-preclusive effects of a civil/criminal adjudication upon a proceeding of the opposite character,* 7 N Ill L R 141 (1987), in which the phenomenon is reviewed and analyzed.

[10] The rendition of a judgment in an action does not conclude parties to the action who are not adversaries under the pleadings as to their rights inter se upon matters which they did not litigate, or have an opportunity to litigate, between themselves. [Restatement Judgments, § 82, pp 384-385.]

A person who is not a party but who is in privity with the parties . . . is . . . bound by and entitled to the benefits of the rules of res judicata. [Restatement Judgments, § 83, p 389.]

said that one of the "critical factors" in applying collateral estoppel is the determination of whether the respective litigants were parties or privy to a party to an action in which a valid judgment has been rendered.

Although the named-party plaintiff in the instant case is the People of the State of Michigan, in practical terms the party against whom collateral estoppel is asserted is the Jackson County Prosecutor, who also represented the Department of Social Services in the probate court proceeding. Defendant argues that even though the Department of Social Services was the nominal party in the earlier proceeding, both the department and the prosecutor's office are creatures of the state and thus should be considered to be the same party.[11] We agree. A functional analysis of the role of the prosecutor in both proceedings is appropriate in this case, and leads us to conclude that privity is sufficient to satisfy the "same party" requirement.[12]

In analyzing whether an issue was "actually litigated" in the prior proceeding, the Court must look at more than what has been pled and argued. We must also consider whether the party against whom collateral estoppel is asserted has had a full

[11] This is the conclusion reached by the Court of Appeals in *People v Watt*, 115 Mich App 172, 175; 320 NW2d 333 (1982), lv den 413 Mich 926 (1982). The Court of Appeals in the instant case found *Watt* to be dispositive. 168 Mich App 384, 388; 423 NW2d 668 (1988).

[12] One commentator has observed that "[i]n recent decades, there seems to have developed a nearly universal agreement among judges and scholarly commentators alike that res judicata cannot be soundly administered by means of resolute adherence to a battery of self-enclosed rules . . . as constituting the sole and sufficient grounds of decisions in cases involving the preclusive effect of judgments." Instead, collateral estoppel determinations increasingly are the product of "multifaceted analysis and balancing of competing and vaguely defined governmental and private interests . . . ." Holland, *Modernizing res judicata: Reflections on the Parklane doctrine,* 55 Ind L J 615, 618-619 (1980).

and fair opportunity to litigate the issue. *Blonder-Tongue Laboratories, Inc v Univ of Illinois Foundation,* 402 US 313, 329; 91 S Ct 1434; 28 L Ed 2d 788 (1971).

It is clear that the issue of defendant's alleged sexual abuse of his daughter was the factual focus of the jury trial in probate court. The transcript reveals that the testimony of the witnesses and the arguments of the parties centered on the allegation of sexual abuse that is also the basis of the criminal charge. At least in this sense, it can be said that the issue whether defendant sexually abused the child was "actually litigated."

We do not overlook that the rules governing child protective proceedings in probate court are significantly different than the rules which apply to criminal trials.[13] As we will later discuss, such procedural differences raise serious doubt about the soundness of applying "cross-over estoppel" in situations such as this case presents. However, we do not base our decision on a finding that the prosecutor was seriously disadvantaged or otherwise denied a full and fair opportunity to litigate the issue of defendant's alleged criminal conduct. Indeed, in its brief the amicus curiae Prosecuting Attorneys Association stated that it is "fair to say that the issue was fully litigated."

We move now to a discussion of the principal ground on which our decision rests.

B

Assuming arguendo that the issue as to which

---

[13] For example, see MCR 5.972(C)(1) (the burden of proof in a probate proceeding is a preponderance of the evidence); MCR 5.965(B)(6) (a referee, rather than a judge, may preside at the trial); MCR 5.972(C)(2) (statements by a child which do not fall within an exception to the hearsay rule are admissible under certain circumstances). See also n 20.

collateral estoppel is asserted has been fully liti-
gated, we conclude that the instant case falls short
with respect to another requirement, i.e., that the
issue be "necessarily determined" by the judgment
in the prior proceeding. An issue is necessarily
determined only if it is "essential" to the judg-
ment. 1 Restatement Judgments, 2d, § 27, p 250,
comment h, p 258. In order for collateral estoppel
to operate as a bar to a subsequent prosecution,
the jury in the earlier probate proceeding must
*necessarily* have determined that defendant was
not guilty of the criminal sexual conduct charged
in the prosecutor's complaint. *MacKenzie v Union
Guardian Trust Co,* 262 Mich 563, 581-582; 247
NW 914 (1933).

The inability of a court to determine upon what
basis an acquitting jury reached its verdict, is, by
itself, enough to preclude the defense of collateral
estoppel. See anno: *Modern status of doctrine of
res judicata in criminal cases,* 9 ALR3d 203, 240.
Collateral estoppel applies only where the basis of
the prior judgment can be ascertained clearly,
definitely, and unequivocally. See *Dowling v
United States,* 493 US —; 110 S Ct 668; 107 L Ed
2d 708 (1990); *Sealfon v United States,* 332 US 575;
68 S Ct 237; 92 L Ed 180 (1948).

The verdict in the first proceeding need not
explicitly have addressed the issue to be precluded,
however. The fact that a verdict is a general
verdict may make the determination of what is-
sues have been decided problematic, but it does
not automatically bar the application of collateral
estoppel. *Ashe v Swenson,* 397 US 436, 444; 90 S
Ct 1189; 25 L Ed 2d 469 (1970). In *Ashe,* the
United States Supreme Court suggested that in
the case of a general verdict of acquittal in a
criminal trial the determination of what was nec-
essarily determined by the verdict should start

with an examination of the record of the prior proceeding and culminate in an inquiry "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* See also *Dowling, supra.*

That a verdict may conclusively determine certain issues by implication can be illustrated by the instant case. Had the jury in the earlier proceeding found that the probate court had jurisdiction of the child, that verdict would necessarily have determined that defendant had engaged in the conduct alleged, because that conduct was the only basis submitted to the jury for bringing her within the jurisdiction of the court.[14] A finding that the petition's allegations were proved by a preponderance of the evidence was thus essential to a verdict of jurisdiction.

The verdict of "no jurisdiction," however, does not support the opposite conclusion. In the instant case, the probate judge stated to the jury:

> I do instruct you that this is a child protection case. It is not a criminal case. Therefore, the issue before you is not that of guilt or innocence but the issue is whether [the child] comes within the jurisdiction of the Juvenile Division of the Jackson County Probate Court. You should not consider this proceeding to be in anyway [sic] involved with the criminal law so far as your deliberations are concerned.

The clear import of that instruction is that even if the jury believed that a criminal violation had occurred, it was not required to find the child's home or environment to be unfit so as to warrant

[14] Of course, the heightened burden of proof in a criminal trial would prevent the prosecutor from asserting collateral estoppel against a defendant in the criminal trial.

jurisdiction.[15] In short, a finding of innocence was not essential to a verdict of no jurisdiction; thus, the verdict did not "necessarily determine" the issue of criminal guilt or innocence.[16]

Furthermore, during the course of the trial the jury learned that the child's mother had exclusive physical custody of the child and that visitations with her father had ceased. The jury might have concluded on that basis alone that the child did not require the protection of the probate court. Thus the jury's verdict could rationally have been based on grounds other than a determination of defendant's innocence of the allegations in the petition.[17]

---

[15] The standard jury instructions approved by the Probate Judges Association of Michigan make this point even more emphatically:

Instruction 25

The legal definition of criminality is the same as the common understanding of the word criminality. Criminality is present when a person violates the criminal laws of the State of Michigan or of the United States. *Whether a parent's violation of the criminal laws of the State of Michigan or of the United States renders the home or environment of the child an unfit place for the child to live in is for you to decide based on [sic] all of the evidence in the case.* [Owens, *Juvenile jury instructions,* Inter-com 21, 33 (April, 1989). Emphasis added.]

[16] We are aware of the dangers of a "hypertechnical" analysis of what has been necessarily determined by a judgment, a danger warned of by the United States Supreme Court in *Ashe, supra* at 444. In the instant case, our conclusion that the jury verdict did not determine the issue of criminal guilt or innocence is not based on the fact that the verdict did not address that issue, but on the fact the instruction to the jury made clear that a determination of criminal guilt or innocence was not essential to its verdict.

[17] The Supreme Court of Kentucky applied similar reasoning in its rejection of collateral estoppel in *Gregory v Kentucky,* 610 SW2d 598 (Ky, 1980). Gregory had argued that an express finding in a prior dependency hearing that he had *not* sexually abused his sons estopped his subsequent prosecution for first-degree sodomy. Unlike the instant case, dependency was found in the first proceeding, on the basis of considerations other than the allegations of sexual abuse. The court rejected Gregory's claim of collateral estoppel because the

### III

Apart from our conclusion that defendant's guilt
or innocence was not necessarily determined by
the jury verdict in the probate proceeding, the
purposes of a child protective proceeding and a
criminal proceeding are so fundamentally different
that application in this instance of collateral estoppel would be contrary to sound public policy.[18]

The purpose and focus of a neglect or abuse
proceeding in the juvenile division of the probate
court is the protection of children. To this end,
proceedings may be initiated by anyone who has
information that a child is in need of the court's
protection.[19] To maximize protection of the child,
and at the same time safeguard the interests of
parents whose children are the subject of a petition, the court rules provide for expedited proceed-

---

criminality of Gregory's actions was not before the first court, which
was charged generally with the well-being of the children, and because the first court's express findings on sexual abuse were not
essential to its decision.

[18] Such a public policy exception is recognized by 1 Restatement
Judgments, 2d, § 28, p 273:

> Although an issue is actually litigated and determined by a
> valid and final judgment, and the determination is essential to
> the judgment, relitigation of the issue in a subsequent action
> between the parties is not precluded in the following circumstances:
>
> * * *
>
> (5) There is a clear and convincing need for a new determination of the issue (a) because of the potential adverse impact of
> the determination on the public interest or the interests of
> persons not themselves parties in the initial action . . . .

See *State v Fagan,* 66 NY2d 815; 498 NYS2d 335; 489 NE2d 222
(1985), and *State v Alvey,* 67 Hawaii 49; 678 P2d 5 (1984), for recent
applications of this exception.

[19] MCL 712A.11(1); MSA 27.3178(598.11)(1).

ings.[20] The probate court's protective function is
also promoted by procedure which allows for a
rehearing or a new trial whenever new evidence
comes to light suggesting that the child needs
court protection. MCR 5.992.

· In contrast, the focus of a criminal proceeding is
on the guilt or innocence of the accused. The
interests of children may be affected, e.g., those
related to the accused, but such interests are not
taken into account in determining whether an
accused is guilty of criminal charges. As the
United States Supreme Court stressed in *Standefer
v United States,* 447 US 10, 25; 100 S Ct 1999; 64
L Ed 2d 689 (1980):

> "[T]he purpose of a criminal court is *not* to
> provide a forum for the ascertainment of private
> rights. Rather it is to vindicate the public interest
> in the enforcement of the criminal law while at
> the same time safeguarding the rights of the indi-
> vidual defendant." [Quoting *United States v Stan-
> defer,* 610 F2d 1076, 1093 (CA 3, 1979). Emphasis
> added.]

The disparate purposes of the two types of pro-
ceedings argue strongly against the application of
collateral estoppel. If we were to endorse the
proposition that a determination of no jurisdiction
in a child protective proceeding operates to collat-
erally estop criminal charges, we would invite the
risk that the proper functions of the two proceed-
ings would be compromised.

Typically, a child protective proceeding is initi-
ated by the petition of a person other than the

---

[20] If a petition is filed and the child has been removed from the
home, a preliminary hearing must take place within twenty-four
hours. MCR 5.965(A). If the child remains outside the home, the trial
must take place within forty-two days. If the child has not been taken
into court custody, the deadline for trial is six months. MCR 5.972(A).

prosecutor. Once the petition is filed, however, the prosecutor must be available at the request of the probate court to review the petition for legal sufficiency and to appear at the proceedings. MCR 5.914.

To avoid the effect of collateral estoppel, if it were to be made applicable, a prosecutor would be required to develop criminal charges indicated by the petition and bring them to trial before a determination concerning jurisdiction could be reached in the probate proceeding. However, the burden of proving criminal charges beyond a reasonable doubt, added to problems presented by conflicting procedural[21] and scheduling requirements of the two courts, would make it extremely difficult, and often impossible, for the criminal charges to be brought to trial in circuit court in advance of the jurisdiction determination in probate court.

Thus, the petitioner or the prosecutor would face an unfortunate choice that is not in the public interest: whether to proceed on the petition in probate court because of concern for the child, or to delay the probate proceeding because of concern that a verdict of nonjurisdiction would preclude criminal prosecution of the accused.

We are persuaded by public policy considerations that such an election between criminal and child protective proceedings should not be judicially imposed through the application of collateral estoppel. See *Joiner v State,* 500 So 2d 81 (Ala Crim App, 1986).[22]

Our conclusion that collateral estoppel should

[21] See n 20.

[22] At least one appellate decision in Michigan has relied upon a substantial difference in the purpose of the proceedings as a basis for denying collateral estoppel to issues common to both proceedings. *Thangavelu v Dep't of Licensing & Regulation,* 149 Mich App 546; 386 NW2d 584 (1986), lv den 425 Mich 864 (1986).

not apply in such situations is reinforced by the Restatement of Judgments, 2d, which instructs that another exception to the general rule of issue preclusion is available when:

> A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them . . . . [*Id.*, § 28(3), p 273.]

This exception focuses on an "analysis of the comparative quality and extensiveness of the procedures followed in the two courts, of their relative competence to deal with the particular issue, and of the legislative purpose in allocating jurisdiction between them." Reporter's Note, 1 Restatement Judgments, 2d, § 28, p 287.[23]

Even if it were to be assumed that the "quality" and "extensiveness of the procedures followed in the two courts" (probate and circuit) are comparable, we believe that the "competence" of the probate court to conclusively determine in a child protective proceeding the criminal guilt or innocence of an accused is necessarily compromised by the appropriate focus of the probate court on the protection of children. Further, the disparity of "legislative purpose in allocating jurisdiction" as between the two courts was underscored by the Legislature when it inserted this language in the

---

Other state courts have applied similar reasoning. *In re Katherine & Kimberly B*, 126 Misc 2d 1085; 484 NYS2d 788 (1985); *Gregory v Kentucky*, n 17 supra at 600; *State v Fagan*, n 18 supra, and *State v Alvey*, n 18 supra. Cf. *Lockwood v Superior Court*, 160 Cal App 3d 667; 206 Cal Rptr 785 (1984).

[23] A similar analysis was recently employed by this Court to reject the argument that an MESC adjudication denying unemployment benefits should operate to preclude litigation of issues in a subsequent suit for breach of an employment contract. *Storey v Meijer, Inc*, 431 Mich 368, 372-373; 429 NW2d 169 (1988).

statute under which the petition to protect the child was filed:

> Proceedings under this chapter shall not be considered to be criminal proceedings. [MCL 712A.1; MSA 27.3178(598.1).][24]

IV

Because the issue of defendant's criminal guilt or innocence was not necessarily decided in the prior proceedings in probate court, principles of collateral estoppel do not prohibit the prosecution of defendant.[25] Accordingly, we reverse the decision of the Court of Appeals and vacate the order dismissing the criminal charges against defendant. We remand this case to the trial court for further proceedings in conformity with this opinion.

RILEY, C.J., and BRICKLEY, BOYLE, and ARCHER, JJ., concurred with GRIFFIN, J.

LEVIN, J. (*dissenting*). The question presented is whether the Court of Appeals erred in concluding that this prosecution is barred by the doctrine of collateral estoppel. We would hold that it did not, and would affirm.

A probate court jury found that the court did

---

[24] Prior to 1988 PA 224, the second quoted sentence provided, "Proceedings under this chapter shall not be deemed to be criminal proceedings."

[25] Plaintiff also argues that collateral estoppel should not preclude defendant's criminal prosecution because there is no mutuality of estoppel, citing Restatement Judgments, § 80 *et seq.*, and *Howell, supra* at 45-46. If the jury had found that the probate court did have jurisdiction over the child, defendant would not have been precluded from defending himself against the criminal charge. Cf. 1 Restatement Judgments, 2d, §§ 27-29, pp 250-303; 1B Moore, Federal Practice, ¶ 0.441[3.—2], p 734, and *Bernhard v Bank of America Nat'l Trust & Savings Ass'n,* 19 Cal 2d 807; 122 P2d 892 (1942). Since we are not required by this case to do so, we choose not to revisit the mutuality rule in *Howell* at this time.

not have "jurisdiction" of defendant Gregory Steven Gates' daughter. The majority concludes that the verdict of the probate court jury did not "determine"[1] that Gates had not committed the act of sexual abuse of his three-year-old daughter charged both in the information in the instant case and in the petition filed by the Department of Social Services in the earlier tried probate court proceeding. That conclusion is premised on the manner in which the jury was instructed.

We would hold that the entire record in the probate court proceeding—the charge set forth in the petition, all the evidence, the arguments of counsel, and the instructions read as a whole—should be assessed in deciding whether the verdict of no jurisdiction constituted a determination by the jury that Gates had not sexually abused his daughter. That decision cannot properly be premised on a construction of a single sentence in the instructions viewed in the abstract, separate and apart from the entire record.

I

The judge instructed the jury, in the form of the statute[2] and the standard instructions developed by probate judges,[3] that the jury must find, from all the evidence, whether the child's home or environment, by reason of criminality, was an

---

[1] The majority uses the phrase "necessarily determine." The Restatement uses the term "determine":

When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim. [1 Restatement Judgments, 2d, § 27, p 250.]

[2] See n 3.

[3] See text accompanying n 5.

unfit place for her to live. The question, so posed,
viewed in the abstract, did indeed permit the jury
to find that the criminal conduct charged did not
render her home unfit. It is possible that the jury
understood the instructions as authorizing it to
render a verdict that the home was fit although it
was convinced that Gates had in fact sexually
abused his daughter. And that the jury found that
Gates had in fact sexually abused his daughter but
nevertheless found that her home was fit. Possible,
but not likely.

A

The language of the statute[4] and the phrasing of
the instructions reflect recognition that some acts
of criminal misconduct might not render a home
unfit for a child. A parent who circulates counter-
feit money, embezzles, pollutes the environment,
or commits other crimes that some might view as
more or less serious, may nevertheless provide a fit
home for his children. The statute does not permit
the probate court to assume jurisdiction unless the
jury finds that the criminal act renders the home
unfit.

The jury was thus properly instructed that
"[w]hether a parent's violation of the criminal law
renders the home or environment of the child an

---

[4]   Except as otherwise provided in this section, the juvenile
division of the probate court shall have:

\* \* \*

(b) Jurisdiction in proceedings concerning any child under 17
years of age found within the county:

\* \* \*

(2) Whose home or environment, by reason of neglect, cru-
elty, drunkenness, criminality, or depravity on the part of a
parent, guardian, or other custodian, is an unfit place for such
child to live in. [MCL 712A.2; MSA 27.3178(598.2).]

unfit place for the child is for you to decide based upon all of the *evidence* in the case." (Emphasis supplied.)[5]

## B

There was, however, no evidence or argument—separate and apart from the evidence tending to show that Gates had committed the act of sexual abuse and the evidence to the contrary—focusing on or tending to show whether the home or environment was or was not fit. Thus, assuming arguendo that the jury understood that it was authorized to find the child's home fit although it found that her father had sexually abused her, there is no reason to suppose that the jury in fact found that Gates had sexually abused his daughter but nevertheless found that her home was fit.

---

[5] The majority emphasizes the following instruction:

I do instruct you that this is a child protection case. It is not a criminal case. Therefore, the issue before you is not that of guilt or innocence but the issue is whether [the child] comes within the jurisdiction of the Juvenile Division of the Jackson County Probate Court. You should not consider this proceeding to be in anyway [sic] involved with the criminal law so far as your deliberations are concerned.

That instruction seems to have echoed the penultimate paragraph of the prosecutor's closing argument:

You know, at the very minimum, this is certainly a case that the People believe by at least a preponderance of the evidence, shows to you that this child comes within the jurisdiction of the court and that's what we're asking. It's not a criminal case. This case is not a criminal case. The father cannot go to jail as a result of the proceedings today here, and we would ask you to find that the minor . . . comes within the jurisdiction of the court so the court can keep an eye on her and the court can keep any [sic] eye on the father . . . .

The defendant then objected, and the court said that it would give an instruction concerning what the court does "as a result of your making a finding" and asked the prosecutor whether that would be sufficient, and the prosecutor said that it was.

The amended petition filed in the probate court alleged that Gates had touched his daughter's genitals for the purpose of sexual arousal or gratification.[6] All the evidence introduced by both parties was directed to the primary allegation in the petition: that Gates had touched his daughter's genitals.[7] Neither Gates nor his lawyer contended, expressly or by innuendo, during the examination of witnesses or during oral argument, that even if the jury found that Gates had so touched his daughter's genitals for the purpose of sexual arousal or gratification, her home was nevertheless a fit place for her to live.

A different question would be presented if three issues had been litigated: whether the child had been so touched, whether Gates had so touched her, and, if so, whether her home was nevertheless a fit place for her to live. Because no evidence was introduced focusing on whether the home was fit, even were the jury to find that the criminal conduct alleged in fact occurred, the majority's assertion that factors other than Gates' guilt or inno-

---

[6] The original petition filed by the DSS was amended by the prosecutor when he entered the case. The amendment added the words, "for purposes of sexual arousal or gratification." The additional language mirrors the penal code definition of sexual contact:

> the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or the actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification. [MCL 750.520a(k); MSA 28.788(1)(k).]

[7] In response to a question from one of the justices during oral argument in this Court, the prosecutor acknowledged that he had not alleged any other conditions that would have rendered the home unfit when he filed the proceeding.

During the trial, the prosecution did not go beyond the scope of the petition's limited allegations either during the presentation of the case in chief or during the cross-examination of defense witnesses. Nor did Gates introduce or explore any other issues during his case in chief or on cross-examination of the people's witnesses.

cence may have been the basis of the "no jurisdiction" verdict is tenuous at best.[8]

## II

The Maryland Court of Appeals held that "the doctrine of collateral estoppel prevents the State from criminally trying the defendant on charges of sexual assault and related offenses when, in a prior civil proceeding based upon the same alleged incidents, the court dismissed the action on the ground that the State had failed to prove that the defendant had committed the acts." *Bowling v State,* 298 Md 396, 398; 470 A2d 797 (1984).[9] The court said that "[t]he civil character of the first proceeding does not make inapplicable the doctrine of collateral estoppel in a subsequent criminal case."[10]

In *People v Sims,* 32 Cal 3d 468; 186 Cal Rptr

---

[8] The majority asserts that because the jury learned that the mother had exclusive custody of the child,

> [t]he jury might have concluded on that basis alone that the child did not require the protection of the probate court. Thus the jury's verdict could rationally have been based on grounds other than a determination of the defendant's innocence of the allegations in the petition. [*Ante,* p 160.]

Gates' lawyer did not ask the jury to consider that the mother had exclusive custody of the child or Gates' limited access to her in deciding whether the probate court had jurisdiction of her.

[9] In *Bowling,* a father was charged with sexually assaulting his adopted daughter. A child-in-need-of-assistance petition was filed in circuit court. The petition was based on allegations of sexual abuse. A hearing was held to determine whether the daughter was a child in need of assistance. "The testimony at the hearing dealt almost exclusively with whether or not the alleged incidents of sexual misconduct actually occurred." *Id.,* p 399. The trial judge found that sexual abuse had not been proven by a preponderance of the evidence. *Id.* The court dismissed the petition. Subsequently a criminal indictment was filed against the father. "The indictment was grounded on the identical factual allegations which formed the basis for the earlier . . . petition." *Id.,* p 400.

[10] *Id.,* p 404.

77; 651 P2d 321 (1982), the Supreme Court of
California applied the doctrine of collateral estop-
pel in a criminal case that was preceded by an
administrative hearing.[11] The court said:

> Collateral estoppel may be applied to decisions
> made by administrative agencies "[w]hen an ad-
> ministrative agency is acting in a judicial capacity
> and resolves disputed issues of fact properly before
> it which the parties have had an adequate oppor-
> tunity to litigate . . . ."[12]

The court added that "[t]he [administrative

[11] Sims, a welfare recipient, was notified by the Social Services
Department of Sonoma County that she had received AFDC and food
stamp benefits to which she was not entitled. The county claimed that
she "had failed to report that the children's stepfather . . . was fully
employed and living at home while respondent received public
assistance . . . ." *Id.*, p 473.

The county then prepared a "Notice of Action" against Sims. "The
notice proposed to reduce future cash grants to respondent to compen-
sate for the alleged overpayments." *Id.* Sims filed a request for a "fair
hearing" pursuant to a California statute "to challenge the propriety
of the County's action." *Id.* Prior to Sims' request for a fair hearing,
"a criminal complaint had been filed against her in municipal court.
The complaint was based on the same allegations of fraud that were
the subject of the County's 'Notice of Action.' " *Id.*

While the criminal prosecution was pending, Sims' fair hearing was
held. The hearing officer found that "the County had failed to meet
its burden of proving that respondent had fraudulently obtained
welfare benefits." Sims later moved to dismiss the criminal charges
pending against her. The trial court granted her motion. *Id.*, p 474.

The county had declined to present evidence against Sims at the
hearing. It contended that the DSS lacked jurisdiction to hear the case
since criminal charges were pending in the municipal court.

[12] *Id.*, p 479.

Similarly, see *People v Watt*, 115 Mich App 172, 182; 320 NW2d
333 (1982), where the Court of Appeals applied the doctrine of
collateral estoppel to bar a criminal prosecution, and said:

> Since the very essence of the criminal proceeding was based
> upon the allegation that defendant fraudulently misrepresented
> to the DSS regarding whether or not her ex-husband resided
> with her in her home, and since, in an appropriate proceeding,
> the administrative law judge held that the DSS had not estab-
> lished that fact . . . we believe that the criminal conviction
> must here be reversed and the criminal proceedings dismissed.

agency] decision exonerating [the accused] of fraud may be given collateral estoppel effect. This is true even where, as in this case, the successive proceedings involved are different in nature and the proceeding to be estopped is a criminal prosecution."[13]

*Bowling* and *Sims* are, however, distinguishable because in both cases the trial court in the civil proceeding specifically found that the criminal misconduct charged in the criminal prosecution had not occurred while here there was not such a specific finding.

### III

Whenever there is a general verdict—most jury verdicts are general verdicts—there will be difficulty deciding what the jury determined regarding the underlying disputed issues of fact requisite to the ultimate finding. In deciding whether an issue of fact was actually litigated and determined, a court should assess the entire record and decide the question based on the probabilities and not possibilities.

That was the approach of the United States Supreme Court in *Ashe v Swenson,* 397 US 436; 90 S Ct 1189; 25 L Ed 2d 469 (1970). The Court said that "[w]here a previous judgment of acquittal was based upon a general verdict" in deciding whether relitigation is barred by the doctrine of collateral estoppel, a court should

"examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon

[13] *Id.,* p 482.

an issue other than that which the defendant seeks to foreclose from consideration."[14]

The majority cites *Ashe* with apparent approval, but does not in its analysis employ the standard there stated.[15]

The trial centered on Gates' culpability. In his closing remarks to the jury, the judge said: "When you deliberate, you are only allowed to consider the evidence which has been properly admitted in this case." The only "evidence" that had been admitted was testimony concerning whether the child had been molested and, if so, whether Gates was the person who had molested her. No evidence otherwise bearing on the fitness of her home had been introduced.

Where the trier of fact/court renders alternative determinations of fact or law either of which would have supported the earlier judgment, neither determination is "essential to the judgment."[16] Where, however, only one issue is litigated,[17] only one issue could have been determined, and ordinarily there is no reason to suppose that another issue, not litigated, was determined or was determinative.

The parties frame the debate on a given issue through their presentations. They define the parameters in which the jury will consider the competing evidence and arguments. When the parties to a controversy plead, litigate, and submit an issue to the jury, a general verdict should ordinarily be regarded as deciding that issue. There

---

[14] *Id.,* p 444.

[15] *Ante,* p 158.

[16] 1 Restatement Judgments, 2d, § 27, comment h, p 258.

See n 1 for § 27 of the Restatement Judgments, 2d.

[17] The majority concedes that the question of Gates' guilt or innocence was the factual focus of the probate proceeding such that it was "actually litigated." *Ante,* p 156.

should be a strong presumption that the decision
of the jury is based on the issue pled, litigated, and
submitted, rebuttable only by compelling evidence
that the verdict did not decide that issue.

Here the only issue that was litigated was
whether Gates had sexually abused his daughter.
The overwhelming probability is that the factual
issue determined by the jury, when it rendered its
verdict, was whether Gates had sexually abused
his daughter, as the people so vigorously, but so
far unsuccessfully, contended.

There is considerable uncertainty in most law-
suits. The law does not require absolute proof or
certainty. The standard applied by the majority in
the instant case, in deciding whether the factual
issue of Gates' culpability was determined by the
jury, is higher than the standard the jury, on the
retrial ordered by the majority, will apply in again
deciding that factual issue.

The doctrine of collateral estoppel evolved in
response to "the concern of the public in the
settlement of litigation in the interest of a stable
society and in minimizing expense and effort of the
courts, as well as of litigants."[18] Application of the
doctrine in a case where a person's liberty inter-
ests are at stake provides assurance that

> matters once determined in an adversary action
> shall be deemed conclusive, thus furnishing a basis
> upon which to predicate future conduct without
> fear of repeated vexation arising from relitigation
> of determined issues.[19]

The people failed to convince the jury of Gates'
guilt. He should not be subjected to relitigation of

[18] Polasky, *Collateral estoppel—Effects of prior litigation,* 39 Iowa
L R 217, 219 (1954).

[19] *Id.,* pp 219-220.

the same basic issue—whether he sexually molested his daughter—in a criminal prosecution.

## IV

The majority states that the purposes of a child protective proceeding and a criminal prosecution are so different that application of the doctrine of collateral estoppel would be contrary to sound public policy.[20] Although the general purposes of the two proceedings differ, there is an overlap, and the purposes are not mutually exclusive.

The instant case demonstrates that a function of the probate court proceeding may in fact be to determine whether a parent engaged in criminal misconduct with respect to the parent's child. Where the probate court petition is based solely on an allegation of parental criminal misconduct with respect to the child, the fate of both the child and the parent are inextricably tied to the determination of the parent's guilt or innocence. The probate court cannot act to "protect" the child by acquiring jurisdiction of the child, unless the jury finds that the parent is guilty of the criminal misconduct respecting the child charged in the petition. Where sexual abuse is charged, the purpose sought to be achieved by initiating the abuse/neglect proceeding can only be realized upon a finding by the jury that the parent did in fact commit the charged act of criminal misconduct respecting the child.

In an abuse/neglect proceeding, various considerations may inform the jury's verdict. The application of the doctrine of collateral estoppel in a particular case does not, however, depend on what may occur in another case. It depends on what occurred in the particular case. In the instant case

[20] *Ante,* p 161.

—typical or atypical—the only issue pled, litigated, and submitted to the trier of fact was Gates' guilt or innocence. No evidence bearing on any other issue was provided for the jury's consideration. Collateral estoppel effect should not be denied where there is issue identity, where only one issue was pled, litigated, and submitted to the jury, because in another case more than one issue might be litigated or because there is in theory a difference in the primary purposes of the two proceedings.[21]

The majority contends that applying the doctrine of collateral estoppel in the instant case would, in future cases, oblige a prosecutor to choose between commencing a criminal prosecution to vindicate the public interest in ascertaining guilt and filing a petition in probate court to protect the interests of the child.[22] Reference is

[21] The cases relied on by the majority are distinguishable:

In *State v Fagan,* 66 NY2d 815; 498 NYS2d 335; 489 NE2d 222 (1985), and *State v Alvey,* 67 Hawaii 49; 678 P2d 5 (1984), the courts refused to apply collateral estoppel in a subsequent criminal case to an issue that was previously decided in a civil proceeding. The courts found that the prosecution in the criminal cases did not have a fair opportunity to litigate the issue in the earlier civil proceeding: "[T]he People's incentive to litigate in a felony prosecution would presumably be stronger than in a parole revocation proceeding . . . ." *Fagan, supra,* p 816. "[T]he disciplinary committee's investigative ability is limited." *Alvey, supra,* p 56.

In this case, the majority acknowledges that the issues were fully litigated during the probate court proceeding. See *ante,* p 157.

In *Thangavelu v Dep't of Licensing & Regulation,* 149 Mich App 546, 555; 386 NW2d 584 (1986), lv den 425 Mich 864 (1986), the Court of Appeals affirmed a decision denying collateral estoppel effect in a civil case of an issue that had previously been decided in a criminal case. The Court said that "acquittal of criminal charges does not necessarily bar an administrative revocation proceeding based on the same issues, since a lesser degree of proof is utilized in the latter when making findings of fact." *Thangavelu* recognized that a judgment of acquittal in a criminal case, where the standard is proof beyond a reasonable doubt, does not foreclose the relitigation of the same issue in a civil proceeding where the lower preponderance of the evidence standard is applicable. In this case the sequence of cases is civil to criminal.

[22] *Ante,* pp 163–164.

made to the so-called "42 day" rule set forth in MCR 5.972, which provides that if a child has been taken from the home, i.e., the child is "in placement," "the trial must commence as soon as possible but not later than 42 days after the child is placed by the court . . . ." The majority argues that because of the forty-two-day rule, it would be "extremely difficult, and often impossible, for the criminal charges to be brought to trial in circuit court in advance of the jurisdiction determination in probate court."[23]

The scheduling problem—which case to try first —can be resolved by agreement of the parties or by an amendment of the court rules that this Court has the power to decree. The Court is currently considering a proposal to extend the time frame from forty-two to sixty-three days.[24]

Prosecutors are generally called upon to participate in an abuse/neglect proceeding.[25] When the prosecutor is intimately involved in the litigation, such that the prosecutor has a full and fair opportunity to litigate the issues in the abuse/neglect proceeding, and those issues are actually litigated in the probate proceeding and are the same issues sought to be litigated in the criminal prosecution, the doctrine of collateral estoppel should apply.[26]

---

[23] *Ante,* p 163.

[24] See *post,* p 1204.

[25] (A) General. On request of the court, the prosecuting attorney shall review the petition for legal sufficiency and shall appear at any child protective proceeding . . . . [MCR 5.914(A).]

[U]pon request of the department of social services . . . , the prosecuting attorney shall serve as a legal consultant to the department . . . at all stages of the proceeding. [1988 PA 224, MCL 712A.17(5); MSA 27.3178(598.17)(5).]

[26] If the prosecutor were to be called into a case by the court under MCR 5.914(A), but oppose the petition, then an argument might be

The probate court is a court of record,[27] in contrast with an administrative agency.[28] The prosecutor generally represents the petitioner in a child protective proceeding. The lawyers on both sides are likely to be the same in both the child protective proceeding and the criminal proceeding. This is not a case where the litigants did not have as strong an incentive to litigate in the earlier proceeding as they have in the later proceeding.

If the prosecutor does not participate in the probate court proceeding, application of the doctrine of collateral estoppel may be inappropriate because the prosecutor has not had a full and fair opportunity to litigate.[29]

The record does not substantiate the majority's assertion that the competence of the probate court to determine in a child protective proceeding the criminal guilt or innocence of the parent "is necessarily compromised by the appropriate focus of the probate court on the protection of children."[30] The prosecutor in the instant child protective proceeding focused entirely on the asserted criminal guilt of Gates. The prosecutor was not compromised.

made because the prosecutor's interest would conflict with that of the petitioner. See 46 Am Jur 2d, Judgments, § 532, p 686.

[27] MCL 600.801; MSA 27A.801.

[28] But see People v Sims, supra.

[29] The Court of Appeals in People v Watt, n 12 supra, p 179, People v Grainger, 117 Mich App 740, 753-754; 324 NW2d 762 (1982), and in this case, People v Gates, 168 Mich App 384, 387-388; 423 NW2d 668 (1988), said that because an administrative agency and a county prosecutor's office are "creatures of the same sovereign," there is sufficient privity between the parties to establish the "same parties" requirement for collateral estoppel.

These cases rely on United States v Wheeler, 435 US 313, 320-321; 98 S Ct 1079; 55 L Ed 2d 303 (1978). Wheeler may not, however, be applicable because the Double Jeopardy Clause does not apply unless there are two criminal prosecutions. See Sunshine Anthracite Coal Co v Adkins, 310 US 381, 403; 60 S Ct 907; 84 L Ed 1263 (1940), and State v Fritz, 204 Conn 156, 171-176; 527 A2d 1157 (1987).

[30] Ante, p 164.

Nor was the probate court. The prosecutor simply failed to convince the jury. The prosecutor had his day in court. Gates should not be required to "run the gantlet" again.[31]

We would affirm the decision of the Court of Appeals.

CAVANAGH, J., concurred with LEVIN, J.

[31] *Green v United States,* 355 US 184, 190; 78 S Ct 221; 2 L Ed 2d 199 (1957); *Ashe v Swenson, supra,* p 446.