**IN RE: Zachary N. TROST and Kimberly A. Trost, Debtors.**

**Sherry Trost, Plaintiff,**

**v.**

**Zachary N. Trost and Kimberly A. Trost, Defendants.**

**Case No. GL 13–05887–jtg**
**Adv. Proc. No. 13–80266–jtg**

United States Bankruptcy Court, W.D. Michigan.

Signed February 3, 2016

---

Troy R. Hendrickson, Esq., TROY RICHMOND HENDRICKSON, PLLC, Tempe, Arizona, for Sherry Trost.

Michael R. Behan, Esq., SCHRAM, BEHAN & BEHAN, Okemos, Michigan, for Zachary N. Trost and Kimberly A. Trost.

## *MEMORANDUM DECISION REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT*

John T. Gregg, United States Bankruptcy Judge

This matter comes before the court in connection with cross motions for summary judgment filed by Sherry Trost, the plaintiff in this adversary proceeding (the "Plaintiff"), and Zachary N. Trost and Kimberly A. Trost, the defendants in this adversary proceeding (collectively, the "Defendants"). In their motions, the parties assert that the doctrine of collateral estoppel precludes the relitigation of certain facts and issues which were determined in a prior proceeding. For the following reasons, the court shall deny both motions.

### *INTRODUCTION*

To some extent, this adversary proceeding relates to events that occurred more

than twenty years ago, when Fred Trost, the deceased father and husband of Zachary Trost and the Plaintiff, respectively, claimed that products sold by Buckstop Lure Company, Inc. ("Buckstop") contained cow urine, and not deer urine as advertised.[1] *Buckstop Lure Co. v. Trost (In re Trost)*, 164 B.R. 740, 741 (Bankr. W.D.Mich.1994). The products apparently contained deer urine after all, as Buckstop obtained a judgment for defamation against Fred Trost and Fred Trost Enterprises, Inc. in the amount of $4 million in the Circuit Court for Montcalm County, Michigan. *See also Trost v. Buckstop Lure Co., Inc.*, 644 N.W.2d 54, 58, 249 Mich.App. 580 (2002) (affirming denial of relief from judgment for alleged lack of jurisdiction).

Confronted with the collection efforts of his creditors, including Buckstop, Fred Trost sought relief under Chapter 7 of the Bankruptcy Code in 1992. The bankruptcy of Fred Trost was hardly a success though, as this court ultimately revoked his discharge. *In re Trost*, 164 B.R. at 749. The judgment obtained by Buckstop and the revocation of Fred Trost's discharge set in motion a series of transfers, transactions and broken promises, all of which culminated in the entry of a judgment for common law conversion in favor of the Plaintiff and against the Defendants in the United States District Court for the Western District of Michigan (the "District Court"). *Trost v. Trost*, Case No. 1:09–cv–580 (W.D.Mich. March 8, 2012), *aff'd*, 525 Fed.Appx. 335 (6th Cir.2013).

After the Defendants filed their own bankruptcy, the Plaintiff commenced this adversary proceeding. Relying on factual determinations made in the District Court action, this court previously granted summary judgment to the Plaintiff with respect to a cause of action for willful and malicious injury under section 523(a)(6). *Trost v. Trost (In re Trost)*, 510 B.R. 140, 153–54 (Bankr.W.D.Mich.2014).[2] The motions for summary judgment currently before this court concern the Plaintiff's cause of action under section 523(a)(2)(A) and raise the following issues:

(i) whether the jury verdict finding that the Plaintiff failed to prove claims sounding in fraud by clear and convincing evidence is entitled to collateral estoppel in this adversary proceeding; and

(ii) whether the jury verdict which allegedly includes a finding of "deceit and/or false representations" in connection with the Plaintiff's claim for common law conversion is entitled to collateral estoppel in this adversary proceeding.

## JURISDICTION

The court has jurisdiction pursuant to 28 U.S.C. § 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## BACKGROUND

As the parties note in their motions, the facts are undisputed and have previously been established on several occasions.[3]

---

1. Kimberly Trost is married to Zachary Trost.

2. The Plaintiff was previously awarded damages in the amount of $108,797.06 for her claim under section 523(a)(6). *Id.* at 154. Assuming *arguendo* that the Plaintiff eventually prevails on her claim under section 523(a)(2)(A), it is unlikely that she will be entitled to even $1.00 more. Rather, the damages sought under the two claims are

arguably duplicative. *See Trost*, 525 Fed. Appx. at 346 (citations omitted) (election of remedies doctrine—"the legal version of the idea that a plaintiff may not have his cake and eat it too"—prevents double recovery on conversion and breach of contract claims).

3. As previously recognized by this court, "[t]he Sixth Circuit's factual summary is binding on this court and is entirely consistent

This court sees no need to recite them any differently in this Memorandum Decision.

## A. The Agreement Between Sherry Trost and Zachary Trost

Plaintiff, Sherry Trost, is the widower [sic] of Fred Trost. Fred Trost started a television show in Michigan in 1982, titled Michigan Outdoors. Michigan Outdoors was a dba of Fred Trost Enterprises, Inc. Fred Trost Enterprises, Inc. accumulated significant debts, including, but not limited to, a significant multi-million dollar civil judgment known as the "Buck Stop Judgment." Plaintiff married Fred Trost on July 29, 1988 ... The "Michigan Outdoors" tape library owned by Fred Trost Enterprises, Inc. was bought by ZNT Marketing, Inc., a company owned by Zachary Trost and JoAnn Cribley at [t]he auction held when all assets related to the television show were seized due to the Buck Stop Judgment. Fred Trost continued to operate his show[;] however[,] the debts from Fred Trost Enterprises, Inc. followed Fred Trost and made it impossible for him to own or operate the show in his own name or to own any assets of the show. In fact, Fred Trost was going to have to shut down the show and the business because of the debt. Fred Trost was to receive a significant inheritance from his parents upon their passing[;] however[,] these funds would not be available in time to save the show. Plaintiff and nonparty JoAnn Cribley agreed to take ownership of the show and its assets and agreed to take on the show's debts in their names so that Fred Trost could continue to operate the show. Plaintiff and JoAnn Cribley became officers and owners of Practical Sportsman, Inc.

In 2002, a non-profit corporation, Practical Sportsman Foundation, was set up in order to continue the operation of the show. Again, JoAnn Cribley and Sherry Trost were officers of Practical Sportsman Foundation. Practical Sportsman Foundation took on debts of the previous business entities and incurred additional debt. Fred Trost remained in charge of the running of the business, including finances and bookkeeping ...

Fred Trost became suddenly ill in May 2007. After several months in the hospital, Fred Trost passed away in July 2007 prior to receiving his inheritance or paying any of the debts from the show ...

Zachary Trost and [his sister] Tara Trost received an inheritance from Fred Trost's parents.

*In re Trost*, 510 B.R. at 143–44 (citing USDC Dkt. Nos. 69 and 81; *Trost*, 525 Fed.Appx. at 337–38 (citations omitted)).

Sometime after Fred Trost died, the Plaintiff agreed to give Zachary Trost the assets that she owned relating to the Michigan Outdoors show, including videotapes, raw footage and other memorabilia. *Trost*, 525 Fed.Appx. at 338. In exchange for these assets, Zachary Trost agreed to pay off the debts that the Plaintiff incurred from producing and administering the show. *Id.* Zachary Trost, however, did not pay off the debts as he had promised. *Id.* Instead, while attempting to profit from the assets, Zachary Trost ignored the Plaintiff's repeated requests to satisfy the Plaintiff's debts and to return the assets to her. *Id.*

## B. The District Court Litigation and Related Appeal

In 2009, the Plaintiff commenced a civil action in the District Court against the

with the findings of the trial court." *In re* *Trost,* 510 B.R. at 144 n. 4.

Defendants for, among other things, breach of contract, fraud, common law conversion and statutory conversion. *In re Trost*, 510 B.R. at 144 (citing USDC Dkt. No. 17).[4] Approximately three years later and in preparation for trial, the parties jointly filed proposed jury instructions which, in large part, mirrored the Michigan Model Civil Jury Instructions. Mich. M. Civ. JI 128.01, 128.03.[5] With respect to the Plaintiff's claim for "Fraud Based on False Representation," the jury instruction was based on the model instruction and stated as follows:

M Civ JI 128.01 Fraud Based on False Representation

Plaintiff claims that Defendant Zachary Trost defrauded her. To establish fraud, [P]laintiff has the burden of proving each of the following elements by clear and convincing evidence:

a. Defendant made a representation of a material fact.

b. The representation was false when it was made.

c. Defendant knew the representation was false when he made it, or defendant made it recklessly, that is, without knowing whether it was true.

d. Defendant made the representation with the intent that the Plaintiff rely on it.

e. Plaintiff relied on the representation.

f. Plaintiff was damaged as a result of her reliance.

(USDC Dkt. No. 72 at p. 30.)

With respect to the Plaintiff's claim for "Fraud Based on Bad Faith Promise," the jury instruction was again based on the model instruction and stated as follows:

M Civ JI 128.03 Fraud Based on Bad Faith Promise

Plaintiff claims that Defendant Zachary Trost defrauded her by making a promise of future conduct. To establish this, Plaintiff has the burden of proving each of the following elements by clear and convincing evidence:

a. Defendant promised that he would pay off all the debts of the show if Plaintiff gave him all the property from the show.

b. At the time Defendant made the promise, he did not intend to keep it.

c. Defendant made the promise with the intent that Plaintiff rely on it.

d. Plaintiff relied on the promise.

e. Plaintiff was damaged as a result of her reliance.

(USDC Dkt. No. 72 at p. 31.)

The jury instructions also addressed the Plaintiff's claim for common law conversion. However, for some reason, the parties did not use a form jury instruction for the claim of common law conversion. *See* Mich. Non–Standard Civ. JI 28:1. Instead, the parties submitted the following jury instruction with respect to common law conversion:

*Foremost Ins. Co. v. Allstate Ins. Co.*, 439 Mich. 378, 391, 486 N.W.2d 600 (1992)

(1992) Common Law Conversion

The tort of common law conversion is any distinct act of domain wrongfully exerted over another's personal proper-

---

4. Notably, the Plaintiff asserted a claim for conversion against both Defendants but asserted fraud-based claims against only Zachary Trost. (USDC Dkt. No. 72 at pp. 30–31, 34.)

5. The Defendants raised certain objections to the proposed jury instructions, none of which are relevant for purposes of this matter.

ty in denial of or inconsistent with the rights therein.

Plaintiff claims the Defendants Zachary and Kim Trost converted her property by obtaining that property through deceit and/or false representations. *To establish this Plaintiff has the burden of proving that Defendant or Defendants obtained Plaintiff's property by deceit and/or false representations.*

(USDC Dkt. No. 72 at p. 34 (emphasis added).) The jury instruction further provided that the Plaintiff must prove all of the elements of common law conversion by a preponderance of the evidence. (*Id.*) In the absence of any objection and at the request of the parties, the District Court adopted the proposed jury instruction for common law conversion. (USDC Dkt. No. 81.)

In early February 2012, the District Court conducted a three day jury trial. *Trost,* 525 Fed.Appx. at 339. During her case in chief, the Plaintiff and three other witnesses testified. *Id.* The Plaintiff also offered over twenty exhibits into evidence. *Id.* After the Plaintiff concluded her case in chief, the Defendants rested without testifying and without calling a single witness or offering any other evidence. *Id.* at 340. Instead, the Defendants filed a motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) at the conclusion of the trial. *Id.* The District Court took the motion under advisement and submitted the case to the jury. *Id.*

On February 8, 2012, the jury returned a verdict finding in favor of the Plaintiff and against the Defendants for common law conversion in the amount of $108,797.06. (USDC Dkt. No. 86.) The jury also found in favor of the Plaintiff and against Zachary Trost for breach of contract in the amount of $194,725.30. (*Id.*) However, the jury found that the Plaintiff did not prove either of her fraud-based claims by clear and convincing evidence. (*Id.*)

One month later, the District Court entered a detailed order granting in part, and denying in part, the Defendants' motion for a judgment as a matter of law. (USDC Dkt. No. 88.) The District Court concluded that the Defendants were not entitled to a judgment as a matter of law on the counts for fraud and conversion. *See In re Trost,* 510 B.R. at 146–47 (summarizing decision of District Court as it relates to common law conversion). The District Court also concluded that the Defendants were entitled to a judgment as a matter of law on the breach of contract count, and thus vacated the jury verdict in this regard.

The Defendants appealed the denial of their motion with respect to the conversion claim to the Sixth Circuit Court of Appeals, which affirmed the District Court by rejecting all of the Defendants' arguments related to common law conversion. *Trost,* 525 Fed.Appx. at 341–44.[6]

### C. The Non–Dischargeability Action

Approximately two months after the decision from the Sixth Circuit, the Defendants jointly filed for relief under Chapter 7 in this court. Shortly thereafter, the Plaintiff commenced this adversary proceeding by filing a complaint [Adv. Dkt. No. 1] alleging that the debt owed to her

---

**6.** The Sixth Circuit reversed and remanded the District Court's decision to vacate the jury verdict with respect to breach of contract. *Id.* at 346. The Sixth Circuit stated that because the damages for the claims of common law conversion and breach of contract were co-extensive, the Plaintiff would need to elect her remedy so as to avoid a double recovery. *Id.; see also supra* at n.2. The Plaintiff also appealed. However, the court need not discuss the Plaintiff's issues on appeal as they are irrelevant to this Memorandum Decision.

by the Defendants should be declared non-dischargeable. According to the Plaintiff, the debt owed to her resulted from the Defendants' fraudulent conduct under section 523(a)(2) and constituted a willful and malicious injury to the Plaintiff's property under section 523(a)(6).[7]

In February 2014, the Plaintiff filed a motion for summary judgment with respect to willful and malicious injury under section 523(a)(6) [Adv. Dkt. No. 10]. On the same day, the Defendants filed their own motion for summary judgment on all counts of the Plaintiff's complaint [Adv. Dkt. No. 11]. In a written opinion dated May 12, 2014, this court granted the Plaintiff's motion for summary judgment as to willful and malicious injury under section 523(a)(6) and denied the Defendants' motion on the same count. *In re Trost*, 510 B.R. at 153–54. This court concluded that the facts evidencing common law conversion in the District Court, as affirmed on appeal by the Sixth Circuit, were entitled to collateral estoppel in this adversary proceeding. *Id.* at 153.

Approximately two weeks later, the Defendants filed a notice of appeal, which was dismissed by the Bankruptcy Appellate Panel for the Sixth Circuit. *Trost v. Trost (In re Trost)*, e. 13 (6th Cir. BAP Dec. 8, 2014). The Panel concluded that it lacked jurisdiction because this court's decision on the motion for summary judgment was not a final order due to the remaining count under section 523(a)(2)(A). *Id.* at p. 2.

In July 2015, the parties filed their cross motions for summary judgment which are the subject of this Memorandum Decision. In her motion, the Plaintiff contends that the Defendants are precluded by the doctrine of collateral estoppel from asserting that they did not obtain the Plaintiff's property through false representation or other fraudulent means. Specifically, the Plaintiff argues that the jury's finding of common law conversion also encapsulated a finding of "deceit and/or false representations" based on the express language of the jury instruction. As such, the Plaintiff asserts that the jury already determined the issue of fraudulent representation for purposes of section 523(a)(2)(A) in this adversary proceeding.

In response to the Plaintiff's motion, the Defendants argue that the jury separately determined that the Defendants were not liable for fraud and fraudulent misrepresentation. The Defendants thus claim that this court cannot conclude that the jury verdict finding common law conversion supersedes the verdict finding no fraudulent conduct on the part of the Defendants.

The Defendants' motion for summary judgment presents similar legal arguments. In their motion, the Defendants contend that the Plaintiff is collaterally estopped from claiming any fraud on the part of the Defendants because the jury rendered a verdict in which it found that the Plaintiff had not satisfied her burden with respect to her two claims sounding in fraud.

In response, the Plaintiff first stresses that under Michigan law, she was required to satisfy her burden by clear and convincing evidence. However, because claims under section 523(a) require only a showing by a preponderance of the evidence, the Plaintiff argues that the verdict from the District Court does not preclude the claim under section 523(a)(2)(A) in this adversary proceeding. The Plaintiff also

---

7. The complaint also initially sought denial or revocation of the Defendants' discharge under section 727(a) and dismissal of the Defendants' bankruptcy case for lack of good faith. The Plaintiff has since voluntarily dismissed these causes of action [Adv. Dkt. Nos. 45 and 50].

contends that the District Court's decisions to deny the Defendants' motion for summary judgment and subsequent motion for judgment as a matter of law on the fraud count now preclude the Defendants from seeking summary judgment in this adversary proceeding.[8]

This court held a hearing regarding the cross motions, after which the court took the matter under advisement.[9] Upon careful review and consideration of the pertinent facts and applicable law, the court shall deny both motions.

### LEGAL STANDARD

Under Rule 7056 of the Federal Rules of Bankruptcy Procedure, incorporating Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Bankr. P. 7056; *see McCafferty v. McCafferty (In re McCafferty)*, 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The court should not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Instead, the court should only determine whether there is a genuine issue of material fact. *Id.*

The moving party bears the initial burden to demonstrate that no genuine issue of material fact exists by identifying, among other things, the portions of the " 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Upon such a showing, the burden then shifts to the non-moving party to demonstrate a genuine issue of material fact for trial. *Id.* at 324–25, 106 S.Ct. 2548.

The evidence and all reasonable inferences drawn therefrom must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, production of a mere "scintilla of evidence" in support of an essential element of a claim will not forestall summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. The non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. 1348 (citations omitted); *see Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998) (non-moving party must provide more than mere allegations or denials). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348 (citation omitted).

When parties file cross motions for summary judgment, the standard of review does not change. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 463 n. 6 (6th Cir.1999) (citing *Atl. Richfield Co. v.*

---

**8.** In their pleadings, both parties have mentioned the alleged mental illness of Zachary Trost at the time he agreed to assume responsibility for payment of certain debts in exchange for the assets related to Michigan Outdoors. However, at this stage of the proceeding, the parties have not provided this court with any substantial evidence or argument on this issue that would require further discussion. The court notes that neither the District Court nor the jury found any argument regarding mental illness compelling.

**9.** The court conducted two informal settlement conferences with the parties after the hearing on the cross motions.

*Monarch Leasing Co.*, 84 F.3d 204, 206 (6th Cir.1996)). The court must consider each motion separately on the merits because each party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that the party is entitled to judgment as a matter of law. *Id.* (citing *Lansing Dairy v. Espy*, 39 F.3d 1339, 1347 (6th Cir.1994); *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991)).

### DISCUSSION

#### A. False Pretenses, False Representations or Actual Fraud—11 U.S.C. § 523(a)(2)(A)

■ Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge "any debt—for money, property, [or] services ... to the extent obtained by false pretenses, a false representation, or actual fraud...." 11 U.S.C. § 523(a)(2)(A). In order to except a debt from discharge under section 523(a)(2)(A), a creditor must satisfy the following elements:

(i) the debtor obtained money, property, services or credit;

(ii) through a material misrepresentation;

(iii) that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

(iv) the debtor intended to deceive the creditor;

(v) the creditor justifiably relied on the false representation; and

(vi) such reliance was the proximate cause of the loss.

■ *AT & T Universal Card Servs., Inc. v. Rembert (In re Rembert)*, 141 F.3d 277, 280–81 (6th Cir.1998) (citing *Longo v. McLaren (In re McLaren)*, 3 F.3d 958, 961 (6th Cir.1993)); *Flagstar Bank, FSB v. Stricker (In re Stricker)*, 414 B.R. 175, 181 (Bankr.W.D.Mich.2009). A creditor bears

the burden of proof of each element by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Rembert*, 141 F.3d at 281. Exceptions to discharge are to be strictly construed against the creditor. *Id.*

#### B. Principles of Collateral Estoppel

In their cross motions, the parties attempt to rely solely on determinations from the District Court in support of their arguments. The Plaintiff contends that the jury verdict finding the Defendants liable for common law conversion also establishes that the Defendants committed a form of fraud, thereby resulting in a nondischargeable debt. Conversely, the Defendants contend that the jury verdict finding that Zachary Trost did not engage in fraudulent conduct precludes this court from entering judgment in favor of the Plaintiff.

■ The doctrine of collateral estoppel, also known as issue preclusion, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause of action." *In re Markowitz*, 190 F.3d at 461 (citations omitted); *see Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.1981) (bankruptcy court not required to redetermine all underlying facts). The Sixth Circuit has explained that:

> Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation ... To preclude parties from contesting matters that they have had a full and fair opportunity to litigate pro-

tects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions. *United States v. Stauffer Chemical Co.*, 684 F.2d 1174, 1180 (6th Cir.1982) (citations omitted). "Principles of collateral estoppel apply in non-dischargeability actions." *Livingston v. Transnation Title Ins. Co. (In re Livingston)*, 372 Fed.Appx. 613, 617 (6th Cir.2010) (citations omitted).

Where, as in this adversary proceeding, a federal court has previously entered a judgment, the federal law of preclusion must generally be applied to determine the preclusive effect of that judgment. *J.Z.G. Resources v. Shelby Ins. Co.*, 84 F.3d 211, 213–14 (6th Cir. 1996) (stating federal issue and claim preclusion principles should be applied in successive federal diversity actions) (citations omitted); *see John Richards Home Bldg. Co., LLC v. Adell (In John Richards Home Bldg. Co., LLC)*, 404 B.R. 220, 237 (E.D.Mich.2009) (citations omitted) (federal courts apply federal law when determining preclusive effect of prior federal judgment).

However, when a federal court is exercising diversity jurisdiction, some debate exists as to whether to apply collateral estoppel under federal law or the law of the State in which the federal court sits. In *Semtek Int'l Inc. v. Lockheed Martin Corp.*, the United States Supreme Court held that federal common law provides that when a federal court is exercising its diversity jurisdiction, principles of preclusion are determined by adopting "the law that would be applied by state courts in

the State in which the federal diversity court sits." 531 U.S. 497, 508, 121 S.Ct. 1021, 149 L.Ed.2d 32 (2001); *see Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (affirming *res judicata* effect of federal judgment determined by federal common law); *Ranir, LLC v. Dentek Oral Care, Inc.*, 2010 WL 3222513, at *2 (W.D.Mich. Aug. 16, 2010) (recognizing in diversity cases that federal law incorporates rules of preclusion applied by State in which rendering court sits). Although the Supreme Court discussed the rule in the context of *res judicata*, or claim preclusion, the Court used broad language that arguably also requires this rule to be applied to collateral estoppel, or issue preclusion. *Semtek*, 531 U.S. at 507–08, 121 S.Ct. 1021. Since *Semtek*, courts have adopted inconsistent interpretations of the rule. *Compare, e.g., Gamble v. Overton (In re Overton)*, 2009 WL 512159, at *3 (Bankr.D.Idaho Jan. 26, 2009) (rule applies only to claim preclusion) *with Goodwin v. Beckley (In re Beckley)*, 2013 WL 865541, at *4–5 (Bankr.D.Idaho Mar. 7, 2013) (rule applies to claim preclusion and issue preclusion).

This court finds it unnecessary to immerse itself in this issue, as any such determination in the context of this adversary proceeding would be purely academic. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1208 (10th Cir.2001) (declining to decide which principles of collateral estoppel to apply post-*Semtek*, because result would be same under federal law and State law).[10] Michigan law, as the law of the State in which the District Court sits, and federal law are nearly identical, as discussed below. *Com-*

---

**10.** The court's treatment of this issue in this adversary proceeding should not be misinterpreted as indifference to the issue on the whole. To the contrary, as noted in *Semtek*, the issue of which principles of preclusion to

apply could be of extreme importance to the ultimate outcome and is designed to prevent forum shopping. *Semtek*, 531 U.S. at 504, 121 S.Ct. 1021.

pare *People v. Gates*, 452 N.W.2d 627, 630, 434 Mich. 146 (1990) *with Verizon North, Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir.2004). As such, this court's analysis and ultimate conclusions would be the same regardless of whether Michigan or federal collateral estoppel principles are applied. *See Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 921 (6th Cir. BAP 2000) (recognizing pre-*Semtek* that whether federal or state law collateral estoppel principles were applied did not affect outcome); *In re Trost*, 510 B.R. at 150 n.7 (same).[11]

██ In order for collateral estoppel to apply under Michigan law, the following elements must be satisfied:

(i) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding;

(ii) determination of the issue must have been necessary to the outcome of the prior proceeding;

(iii) the prior proceeding must have resulted in a final judgment on the merits; and

(iv) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Hinchman v. Moore*, 312 F.3d 198, 202 (6th Cir.2002) (quoting *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir.2001) (citing *Gates*, 452 N.W.2d at 630, 434 Mich. at 154).

██ Similarly, in order for collateral estoppel to apply under federal law, the following elements must be satisfied:

(i) the issue in the subsequent litigation is identical to that resolved in the earlier litigation;

(ii) the issue was actually litigated and decided in the prior action;

(iii) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation;

(iv) the party to be estopped was a party to the prior litigation (or in privity with such a party); and

(v) the party to be estopped had a full and fair opportunity to litigate the issue.

*Verizon North, Inc. v. Strand*, 367 F.3d at 583 (citations omitted).

██ "Courts are not required to give preclusive effect to contradictory or inconsistent findings of fact." *Tweedie v. Hermoyian (In re Hermoyian)*, 466 B.R. 348, 360–61 (Bankr.E.D.Mich.2012) (citing *Sanderson Farms, Inc. v. Gasbarro*, 299 Fed.Appx. 499 (6th Cir.2008)); *see Gates*, 452 N.W.2d at 631, 434 Mich. at 158 (collateral estoppel applies only where basis of judgment clear, definite and unequivocal) (citing *Dowling v. United States*, 493 U.S. 342, 351–52, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)). The party asserting preclusive effect has the burden of satisfying all of the elements of collateral estoppel. *Spilman*, 656 F.2d at 229 (federal law) (citations omitted); *In re Hermoyian*, 466 B.R. at 362 (state law) (citations omitted).

## C. Application to the Cross Motions in This Adversary Proceeding

Because the parties have filed cross motions for summary judgment, the court must review each motion independently to determine whether the District Court action precludes further litigation under sec-

---

11. In her motion, the Plaintiff acknowledges that it does not matter which law applies, while the Defendants take no position.

tion 523(a)(2)(A) in this adversary proceeding.

### 1. The Plaintiff's Motion

 Applying the elements of collateral estoppel, this court concludes that the Plaintiff's motion for summary judgment must be denied. As an initial matter, the District Court action clearly resulted in a final judgment on the claim of common law conversion, the jury instruction for which included "deceit and/or false representations." The jury verdict as to common law conversion was reinforced by the District Court when it denied the Defendants' motion for judgment as a matter of law, which was affirmed by the Sixth Circuit on appeal. Finally, the Defendants had an opportunity to litigate in the District Court and in fact did so as named defendants throughout the proceeding.

The court next turns to the issue of whether a finding of "deceit and/or false representations" was necessary to the jury's verdict with respect to common law conversion. In her motion, the Plaintiff contends that the "verdict, the judgment and affirmation of the judgment depended directly on the issue litigated, whether Defendants obtained Plaintiff's property by deceit and/or false representation." The Plaintiff further argues that the "Plaintiff could only succeed on her conversion claim in the federal diversity action if she proved that Defendants obtained her property through deceit and/or false representation." The Plaintiff's arguments are misplaced.

Notwithstanding the Plaintiff's suggestions to the contrary, it does not appear that the jury, or the District Court for that matter, made any finding that the Defendants obtained the Plaintiff's property through "deceit and/or false representations." The jury verdict was a general verdict. Because the completed jury verdict form is silent as to particularized findings, including with respect to "deceit and/or false representations," this court must review the entire record from the District Court to determine the rights, facts and issues that were determined as part of that proceeding. *Spilman*, 656 F.2d at 228; *Gates*, 452 N.W.2d at 631–32, 434 Mich. at 158–59 (entire record from prior proceeding used to supplement general jury verdict in order to determine if finding necessary and essential). After undertaking such review, this court has not identified anything in the record from the District Court that supports the Plaintiff's argument that the jury found any "deceit and/or false representations." Rather, the jury found that the Defendants were not liable to the Plaintiff for either of the two claims sounding in fraud. (USDC Dkt. No. 86 at p. 2.)

In addition, after setting forth the requirements for common law conversion under Michigan law, the District Court upheld the general verdict as a matter of law without *any* reference to "deceit and/or false representations." (USDC Dkt. No. 88 at pp. 16–19.) The District Court explained the basis for its decision as follows:

> [The Defendants] initially took possession of the property with Sherry's blessing. This was essentially Zachary's project, but as the email exhibits suggest, Kim Trost, as Zachary's wife and a party of the "family," was fully aware of what was happening. Zachary, e.g., e-mailed JoAnn Cribley on July 25, 2008 that, "Kim and I are still planning to help you and Sherry out." [citation omitted]. The evidence also shows that Zachary continued to hold and exercise control over the property in their home, and neither one returned any of it, despite demands by both Sherry and her attorney, even up to the time of trial. Rather, they stopped talking to Sherry.

*This behavior constituted conversion as defined above,* and significantly, neither Zachary nor Kim took the stand to deny it. Based on the testimony and exhibits Sherry Trost produced, there was a sufficient basis for the jury to make a finding of common law conversion against Zachary and Kim Trost.

*In re Trost,* 510 B.R. at 147–48 (citing USDC Dkt. No. 88 at pp. 18–19.) (emphasis added). Finally, other than the jury instruction itself, the Plaintiff has not directed this court to anything in the record from the District Court in support of her argument that "deceit and/or false representations" were determined.[12] This court therefore concludes that no finding of "deceit and/or false representations" was made in the prior proceeding before the District Court.

■■■■■ However, even if the jury had found "deceit and/or false representations" in connection with the claim of common law conversion as the Plaintiff contends, any such determination must still be necessary. An issue is "necessarily determined" if it is essential to the judgment. *See, e.g., In re Livingston,* 372 Fed.Appx. at 617 (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.,* 402 U.S. 313, 329, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971) (citation omitted)); *Morris v. Charron (In re Charron),* 541 B.R. 656, 668 (Bankr. W.D.Mich.2015) (issue must be recognized as important by parties and by trier as necessary) (quoting *Restatement (Second) of Judgments* § 27 at cmt.j). In other words, " '[i]f issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a

subsequent action between the parties is not precluded.' " *General Motors, LLC v. Gunner (In re Gunner),* 2013 WL 663733, at *4 (Bankr.E.D.Mich. Jan. 30, 2013) (quoting *Restatement (Second) of Judgments* § 27 (1982) (emphasis added)); *see* 18 Charles Alan Wright & Arthur R. Miller, *Fed. Practice and Procedure* § 4421 (2d ed.2013) (collateral estoppel "attaches only to determinations that were necessary to support the judgment entered in the first action.").

In a recent decision from the Bankruptcy Appellate Panel for the Sixth Circuit with facts similar to those in the present adversary proceeding, the Panel considered whether elements of fraud were necessarily determined by the state court in connection with a default judgment for statutory conversion. Concluding that the plaintiff was not entitled to collateral estoppel, the Panel explained:

As noted above, statutory conversion under Michigan Compiled Laws § 600.2919a does not require circumstances indicating fraud. Section 600.2919a(a) defines statutory conversion as "[a]nother person's stealing or embezzling property *or* converting property to the other person's own use" (emphasis added).

Allegations of fraud, even if deemed admitted based on a defendant's default, cannot be "necessarily determined" for purposes of issue preclusion if they were not an essential element for a finding of statutory conversion. *See In re Markowitz,* 190 F.3d at 462 (in holding that the state court jury's finding of legal

---

12. The court relies on the parties to identify the relevant portions of the record for the court to consider. *Poss v. Morris (In re Morris),* 260 F.3d 654, 665 (6th Cir.2001) (citation omitted) (trial court does not have duty to search entire record for absence of issue of material fact). The court declines to adopt

what has been referred to as a "wholesale" approach, and instead requires a "retail" approach. *See also New Products Corp. v. Tibble (In re Modern Plastics Corp.),* 543 B.R. 819, 823 n. 6 (Bankr.W.D.Mich.2016) (requiring document-specific admission of exhibits).

malpractice did not decide issue of "willful and malicious injury" under § 523(a)(6), the Sixth Circuit noted that the state court recognized a requested special interrogatory on the question of willful and malicious injury "was neither necessary nor essential to [the state court] judgment"); *In re Pixley*, 456 B.R. at 787–89 (allegations in state court complaint that injury to plaintiff was "willful" within the meaning of § 523(a)(6) were not "necessary to" or "essential to support" judgment for statutory conversion under Michigan law). And since Michigan law does not require circumstances of fraud for statutory conversion under Michigan Compiled Laws § 600.2919a(a), the state court judgment cannot have issue preclusive effect as to the third element of nondischargeability for embezzlement under § 523(a)(4). Therefore, the bankruptcy court erred when it granted summary judgment for Plaintiffs based on the issue preclusive effect of the prior state court judgment. *Dantone v. Dantone (In re Dantone)*, 477 B.R. 28, 39–40 (6th Cir. BAP 2012). This court finds the decision in *Dantone* to be persuasive and consistent with the interpretations of other courts when applying principles of collateral estoppel under federal law and Michigan law. *See, e.g.*, *Santana–Albarran v. Ashcroft*, 393 F.3d 699, 704 (6th Cir.2005) (applying federal collateral estoppel principles to conclude that the date illegal alien last entered country was not necessary and essential to judgment on legality of alien's presence in the country); *Gates*, 452 N.W.2d at 631–32, 434 Mich. at 159–59 (citing *Ashe v. Swenson*, 397 U.S. 436, 444, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970)); *contra Stoehr v. Mo-*

*hamed*, 244 F.3d 206, 208–09 (1st Cir.2001) (finding of fraud in connection with violation of consumer protection statute entitled to collateral estoppel effect in nondischargeability action because no theory of liability other than fraud pursued and state court made specific findings of fact).

▮▮▮▮▮▮ In this adversary proceeding and similar to *Dantone*, it was unnecessary for the jury to find "deceit and/or false representations" in connection with a claim for common law conversion. *See In re Dantone*, 477 B.R. at 39–40. Under Michigan law, common law conversion is defined as "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." *Foremost Ins. Co. v. Allstate Ins. Co.*, 486 N.W.2d 600, 606, 439 Mich. 378 (1992) (citations omitted). It is generally "viewed as an intentional tort in the sense that the converter's actions are willful." *Id.* However, common law conversion can also "be committed unwittingly if [the converter is] unaware of the plaintiff's outstanding property interest." *Id.*

After conducting some independent research, this court has been unable to identify any decisions which require a finding of "deceit and/or false representations" in order to establish common law conversion under Michigan law, nor has the Plaintiff directed the court to any. The court concludes that the finding of "deceit and/or false representations" (to the extent it was even made by the jury) was not necessary to determine common law conversion in the District Court action.[13] As such, the Plaintiff is not entitled to collateral estoppel for purposes of section 523(a)(2)(A),

---

**13.** Such conclusion does not affect the jury verdict with respect to common law conversion and, subsequently, the determination of the District Court as a matter of law. The Plaintiff was required to establish all of the

elements of common law conversion under Michigan law, which it did. *See Trost*, 525 Fed.Appx. at 341–44; *In re Trost*, 510 B.R. at 153–54.

and her motion for summary judgment must be denied.[14]

### 2. The Defendant's Motion

■ The Defendants' motion for summary judgment must also be denied, albeit for entirely different reasons. In their motion, the Defendants contend that the Plaintiff is collaterally estopped from claiming any fraud on the part of the Defendants because the jury rendered a verdict in which it found that the Plaintiff had not satisfied her burden with respect to claims sounding in fraud. The Plaintiff counters, quite convincingly, that summary judgment cannot be granted in favor of the Defendant because the burden of proof for fraud is not the same in this adversary proceeding as it was in the District Court action.[15]

The United States Supreme Court has observed that different burdens of proof may preclude the application of collateral estoppel in non-dischargeability actions. See Grogan v. Garner, 498 U.S. 279, 284–85, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).[16] In Grogan, the Supreme Court intimated that a higher burden of proof in a prior proceeding would not subject a plaintiff to collateral estoppel in a subsequent proceeding. Id. at 285, 111 S.Ct. 654. The Supreme Court stated that a plaintiff "who successfully obtained a fraud judgment in a jurisdiction that requires proof of fraud by clear and convincing evidence would . . . be indifferent to the burden of proof regarding nondischargeability, because he could invoke collateral estoppel in any event." Id. Importantly, the Supreme Court further noted that "[t]his indifference would not be shared, however, by a creditor who either did not try, or tried unsuccessfully, to prove fraud in a jurisdiction requiring clear and convincing evidence but who nonetheless established a valid claim by proving, for example, a breach of contract involving the same transaction." Id. at 285, 111 S.Ct. 654 n. 12 (emphasis in original); see also Marlene Indus. Corp. v. N.L.R.B, 712 F.2d 1011, 1016 (6th Cir.1983) (noting pre-Grogan that "vast majority of courts" recognize that difference in burden of proof is factor to consider when applying doctrine of collateral estoppel).[17]

---

**14.** Because any determination of "deceit and/or false representations" was not made, or at the very least, was unnecessary, this court need not address the remaining elements of collateral estoppel.

**15.** The Plaintiff further argues in her response brief that she is not precluded by the jury verdict from alleging fraud in this adversary proceeding because Kimberly Trost was not alleged to have defrauded the Plaintiff in the action before the District Court. The court declines to address this issue, as the different burdens of proof preclude summary judgment.

**16.** Since Grogan, bankruptcy courts have overwhelmingly recognized that the burden of proof is a threshold inquiry that must be made in order to determine if the precise issue in this adversary proceeding is the same issue as in the prior proceeding. See, e.g.,

Wilmers v. Yeager (In re Yeager), 500 B.R. 547, 555 (Bankr.S.D.Ohio 2013); Fire Safe Protection Servs., LP v. Ayesh (In re Ayesh), 465 B.R. 443, 448 n. 2 (Bankr.S.D.Tex.2011); S.L. Pierce Agency, Inc. v. Painter (In re Painter), 285 B.R. 669, 675–76 (Bankr.S.D.Ohio 2002); Thompson v. Myers (In re Myers), 235 B.R. 838, 843 (Bankr.D.S.C.1998); Jerry Katzman, M.D. Ophthalmic Assocs., P.A. v. Owens (In re Owens), 123 B.R. 434, 438 (Bankr.M.D.Fla. 1991) (citation omitted); Tankersley v. Lynch (In re Lynch), 2014 WL 1096307, at *5–8 (Bankr.E.D.Mich. Mar. 7, 2014) (citation omitted).

**17.** This court finds the observations of the Supreme Court in Grogan to be highly persuasive as dicta, if not controlling altogether. See Ellmann v. Baker (In re Baker), 791 F.3d 677, 682 (6th Cir.2015) (dicta of Supreme Court must be strongly considered absent reason for disregarding it) (citation omitted).

The underlying rationale is fairly straightforward—even though a court may have previously determined that a higher burden of proof was not satisfied, such determination does not necessarily foreclose a party from satisfying a lower burden under the same set of facts in a subsequent proceeding. Thus, the following two rules can generally be used to determine whether to apply collateral estoppel where different burdens of proof exist:

(i) If the burden of proof in the prior proceeding was greater than the burden of proof in the present proceeding, the plaintiff would not be collaterally estopped from relitigating an unfavorable determination in the prior proceeding.

(ii) If the burden of proof in the prior proceeding was less than or equal to the burden of proof in the present proceeding and all other elements of collateral estoppel are satisfied, the plaintiff would be collaterally estopped from relitigating an unfavorable determination in the prior proceeding.

Applying these relatively simple rules, it is clear that the issue in this adversary proceeding is not the same as the issue in the prior proceeding. Under Michigan law, a plaintiff is required to prove fraud by clear and convincing evidence. *See, e.g., Hi–Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816, 398 Mich. 330 (1976). However, in non-dischargeability actions under section 523(a) of the Bankruptcy Code, a plaintiff need only prove fraud by a preponderance of the evidence. *Grogan*, 498 U.S. at 291, 111 S.Ct. 654; *Rembert*, 141 F.3d at 281 (citation omitted).

Because the burden of proof for the fraud-based claims in the District Court action was higher, the Plaintiff is not precluded from pursuing his claim under section 523(a)(2)(A) in this adversary proceed-ing. The Defendants' motion for summary judgment must therefore be denied.

### *CONCLUSION*

For the foregoing reasons, both motions for summary judgment are denied. The court shall enter separate orders consistent with this Memorandum Decision.