# STATE OF MICHIGAN

# COURT OF APPEALS

SAMUEL JEROME,

       Plaintiff-Appellant,

v

MICHAEL CRUM and CITY OF BERKLEY,

       Defendants-Appellees.

UNPUBLISHED
December 27, 2018

No. 335328
Oakland Circuit Court
LC No. 2015-148401-CZ

Before: GLEICHER, P.J., and BOONSTRA and TUKEL, JJ.

GLEICHER, J. (*concurring in part and dissenting in part*).

The majority affirms the summary dismissal of Samuel Jerome's gross negligence claim on both collateral estoppel and causation grounds. The majority's analysis conflicts with binding precedent and reflects a profound misunderstanding of these concepts. I dissent.

## I. BACKGROUND

This case arises from Jerome's prosecution for criminal sexual conduct involving his stepdaughter, AK. AK provided investigators with four different versions of the events underlying Jerome's prosecution. Jerome alleges that defendant Michael Crum, the detective in charge of the investigation, failed to provide the prosecutor or the defense with a videotape of AK's fourth and final interview. His complaint asserts that this omission constituted gross negligence resulting in his prolonged incarceration, public identification as a sex offender, mental anguish, and other tort damages.

In her initial interview with Crum, AK accused Jerome of having sexually assaulted her on two occasions. A forensic interview at CARE House followed, during which AK recanted her allegations. Crum observed AK's disavowal of any abuse during her forensic questioning and characterized it in his notes as "a complete reversal of her recollection of the assaults." A few months went by. Crum reinterviewed AK. He represented to the prosecutor that during her third interview, AK renewed her sexual assault allegations. Crum sought an arrest warrant.

A prosecutor advised Crum that she needed additional information "critical to a determination being made on this warrant request" before a warrant could issue. Crum again interviewed AK. This fourth interview was videotaped. In it, Crum asked leading questions and

directed AK's answers. AK contradicted her earlier statements in several ways.[1] Crum nevertheless advised the prosecutor that AK's interview was "identical" to the first one. He neglected to reveal to the prosecutor that this interview had been videotaped.

Armed with Crum's reassurance about the strength and consistency of AK's testimony, the prosecutor followed through with an arrest warrant. Jerome went to jail on September 18, 2013, and remained incarcerated for almost a full year until the criminal case mistried, his bond was reduced, and he was able to obtain release. The videotape of Crum's final interview with AK emerged only on the last day of Jerome's trial, after the prosecution had rested. According to Crum, "Sergeant Hadfield" found the videotaped interview and presented it to Crum after Crum testified.

Jerome alleges that the videotape precluded any possibility of a conviction and, if viewed before the trial, would have derailed the prosecution's case. The prosecuting attorney who tried the case agreed, commenting after the parties watched the newly emerged videotape, "[T]here's some things that they have [in the videotape] that they could have worked with quite effectively in their defense." A few weeks later, the prosecutor decided not to retry the case, explaining in a dismissal motion, "After further investigation, the People cannot sustain their burden of proving the case beyond a reasonable doubt at trial."

Jerome brought suit against Crum in the federal district court asserting a claim under 42 USC § 1983, alleging unlawful arrest, malicious prosecution, false imprisonment, and denial of due process under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). He premised his allegations on Crum's failure to produce the videotaped interview during discovery in the criminal case. The complaint also stated state law claims for unlawful arrest, malicious prosecution, false imprisonment, and gross negligence. The federal district court declined to exercise supplemental jurisdiction over Jerome's state law claims and dismissed them without prejudice in an order issued on July 27, 2015.

The federal district court ultimately entered a summary judgment in favor of Crum regarding Jerome's federal claims. The federal Court of Appeals for the Sixth Circuit affirmed, finding that probable cause existed for Jerome's arrest and prosecution and that the *nolle prosequi* decision barred Jerome's *Brady* claim. I agree with the majority that collateral estoppel bars Jerome from pursuing the claims that rest on an absence of probable cause. Jerome's gross negligence claim does not fall within that category.

---

[1] Crum's "questioning" included suggestive statements, such as "we all know the horrible things that [Jerome] has done to you," "no one is questioning whether or not you're telling the truth," "we're here to try and overcome the legal crap the defense attorney is going to try to pull," and "I know your mom made you change your story at CARE House." AK's recollection of the assaults differed from the version she first provided regarding the extent of the touching, Jerome's location when he assaulted her, and several other pertinent details. The combination of Crum's improper techniques and AK's inconsistencies made the tape a powerful weapon—for the defense.

## II. COLLATERAL ESTOPPEL

A party relying on the doctrine of "collateral estoppel must show that (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issue, and (3) there was mutuality of estoppel." *People v Trakhtenberg*, 493 Mich 38, 48; 826 NW2d 136 (2012) (cleaned up).[2]  Pertinent here is the first of these factors—that the factual issue was *actually litigated and determined* in the prior proceeding.  To satisfy that requirement, the issue had to have been "essential" to the first court's judgment, *People v Gates*, 434 Mich 146, 158; 452 NW2d 627 (1990), and "must be identical, and not merely similar" to the issue for which the application of collateral estoppel is sought.  *Keywell & Rosenfeld v Bithell*, 254 Mich App 300, 340; 657 NW2d 759 (2002) (cleaned up).  The rules governing collateral estoppel must be "strictly applied." *Id*.

None of the factual or legal issues decided by the Sixth Circuit satisfy the legal standards for collateral estoppel, and none relate even remotely to the proximate cause element of Jerome's gross negligence claim.

According to the majority, the Sixth Circuit determined that Crum's withholding of the videotaped interview did not proximately cause Jerome any injury or damage, eliminating his ability to prove the necessary elements of gross negligence.  Three fatal errors contaminate this conclusion.  First, the Sixth Circuit never made such a finding.  The majority has flatly mischaracterized that court's opinion.  Second, the Sixth Circuit never addressed whether proximate cause existed for Jerome's gross negligence claim based on Crum's withholding of the interview videotape; none of the legal aspects of this state law cause of action were "actually litigated" or determined in its opinion.  Third, the snippets the majority cherry-picks from the Sixth Circuit opinion do not stand for the proposition for which the majority cites them.

The majority asserts that "the Sixth Circuit expressly ruled that Crum's failure to disclose the tape of the August 21 interview did not cause any harm to plaintiff."  The Sixth Circuit "expressly" said no such thing.  The portion of the Sixth Circuit's opinion subsequently referenced by the majority addresses Crum's § 1983 malicious prosecution claim.  "The crux of [that] case," the Sixth Circuit explained, "is whether there was a lack of probable cause for the prosecution." *Jerome v Crum*, 695 Fed Appx 935, 942 (CA 6, 2017).  A few sentences later, still within its discussion of the § 1983 malicious prosecution claim, the Court stated, "Jerome cannot show that Crum's omission of the details of the August 21 interview was material to or strengthened the case against him because AK stated the same version of events in the preliminary examination that she did in the August 21 interview." *Id*.  The Sixth Circuit elaborated that because the prosecution was aware of inconsistencies in AK's testimonies and "those differences were the same differences" as would have been revealed by the August 21 interview, "any diminution of probable cause based on those discrepancies would have already

---

[2] This opinion uses the new parenthetical (cleaned up) to improve readability without altering the substance of the quotation.  The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation.  See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

been revealed and Crum's contention of consistent testimony would have had little impact upon the decision to continue prosecution." *Id*. at 942-943.

These comments relate solely to whether probable cause existed to initiate and continue Jerome's prosecution. Probable cause is a complete defense to malicious prosecution. But not so for gross negligence. The legal standards for malicious prosecution differ from those that govern a gross negligence claim. Probable cause figures prominently in malicious prosecution but does not control whether a plaintiff can establish damages in a gross negligence case predicated on withheld evidence. This is but one reason that the Sixth Circuit's adjudication of Jerome's federal malicious prosecution claim has no bearing on his state law gross negligence averments.

A federal claim for malicious prosecution "encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v Anderson*, 625 F3d 294, 308 (CA 6, 2010) (cleaned up). To succeed on such a claim, a plaintiff must prove that "a criminal prosecution was initiated" and that "the defendant influenced or participated in the decision to prosecute," "*there was no probable cause for the prosecution*," the plaintiff was deprived of his liberty apart from the initial arrest, and the criminal proceeding was resolved in the plaintiff's favor. *Id*. at 308-309 (emphasis added) (cleaned up).

The Sixth Circuit held that Jerome's federal malicious prosecution claim failed because he could not show a lack of probable cause, and because probable cause existed for his continued detention regardless of AK's inconsistent statements. In upholding the dismissal of Jerome's malicious prosecution claim, the Court elaborated, "[T]here was an untainted finding of probable cause that was the source of Jerome's detention; Crum's report had nothing to do with it." *Jerome*, 695 Fed Appx at 942. The fact essential to the Sixth Circuit's malicious prosecution judgment was probable cause. Probable cause was the only issue "actually litigated" for collateral estoppel purposes.

Lack of probable cause is also an element of malicious prosecution under Michigan law. *Walsh v Taylor*, 263 Mich App 618, 632-633; 689 NW2d 506 (2004). That is why the Sixth Circuit's finding has preclusive effect as to Jerome's state law malicious prosecution claim.[3]

Jerome's gross negligence claim involves different elements and different proofs. Governmental employees engaged in a governmental function are generally immune from tort liability under Michigan law. A governmental actor's gross negligence is an exception to this rule. MCL 691.1407(2)(c). Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(7)(a). The elements of a gross negligence claim are gross negligence, proximate causation, and damages.

---

[3] Collateral estoppel also bars Jerome's state law claims for unlawful arrest and false imprisonment because an element of these three torts is that the defendants lacked probable cause for Jerome's arrest. Whether probable cause existed was a fact essential to the Sixth Circuit's judgment of Jerome's § 1983 claims based on wrongful arrest, prosecution, and detention. Therefore, the Sixth Circuit's finding that probable cause existed collaterally estops Jerome from pursuing these analogous state law claims.

Under the governmental tort liability act (GTLA), a plaintiff must prove that a defendant's gross negligence was "the" proximate cause of his injuries and damages. MCL 691.1407(2)(c). The Supreme Court recently clarified that in the governmental immunity context, a proper proximate cause analysis focuses on "the foreseeability of the consequences of the conduct of human actors" rather than on weighing the *factual* causes of an injury. *Ray v Swager*, 501 Mich 52, 67; 903 NW2d 366 (2017).

Jerome's state court complaint alleges that Crum's grossly negligent failure to turn over the videotaped interview proximately caused Jerome's prolonged and "wrongful" incarceration, and avers that Jerome sustained typical tort damages (legal expenses, mental and emotional injury, etc.) as a result. Jerome's brief on appeal asserts that even if probable cause supported his arrest, imprisonment and prosecution, Crum "withheld evidence and information from the prosecutor and that when that information was disclosed, the charges . . . were dropped and the prosecution ceased." Given that the prosecution decided to forego its case against Jerome almost immediately after the tape emerged, a reasonable inference follows that if Crum had disclosed the tape's existence earlier, the case against Jerome would have ended earlier. The actions undertaken by the prosecution once the interview came to light supply the circumstantial evidence creating a jury question as to whether Crum's failure to timely disclose the videotape represented the "one most immediate, efficient, and direct cause preceding" Jerome's alleged injuries. See *Robinson v Detroit*, 462 Mich 439, 459; 613 NW2d 307 (2000). The Sixth Circuit did not reject this proximate causation theory; the Sixth Circuit never even considered it. In a nutshell, that is why the collateral estoppel doctrine has no relevance.

The majority professes to agree that "the determination of probable cause in the federal action does not equate to a finding of gross negligence," but proceeds to conflate probable cause and proximate cause. A finding of one is not the same thing as a finding of the other. Yes, the police had probable cause to arrest and prosecute Jerome. But this does not answer an entirely different question—assuming that Crum was grossly negligent, was his gross negligence the foreseeable cause of Jerome's prolonged incarceration? Collateral estoppel applies when the issues are "identical, and not merely similar." *Keywell & Rosenfeld*, 254 Mich App at 340. The majority overlooks this rule, just as it overlooks the obvious distinctions between the concepts of probable cause and proximate cause. The terms proximate cause and probable cause share a word, but not a meaning. Assessing facts to evaluate proximate cause is not the same as engaging in a probable cause analysis.

The majority commits an additional legal error, and an egregious one. The majority opines, "The application of the doctrine of collateral estoppel is not limited to the same or similar claims because it involves *issue* preclusion, not *claim* preclusion." (Emphasis in original). Therefore, the majority reasons, that Jerome brought a different claim in state court makes no difference. This pronouncement entirely misses the point. Collateral estoppel precludes the relitigation of an issue *actually* and *necessarily* determined in the prior proceeding. *Gates*, 434 Mich at 158. The *issues* must be identical. Further, "[a]n issue is necessarily determined only if it is 'essential' to the judgment." *Id*.

Different claims usually involve different facts and different legal issues. The elements of the claims supply a critical starting point because they establish the nature of the issues actually and necessarily involved in the case. Only by focusing on the nature of the claim and

the issues subsumed within that claim can a court determine whether an issue was actually and necessarily decided in a previous case.

The issue presented here—whether Crum's gross negligence proximately caused Jerome's damages—was not determined by the Sixth Circuit. The Sixth Circuit's opinion never uses the words "gross negligence," "causation," or "proximate cause." It never even uses the word "cause" apart from the modifier "probable." And the case cited by the majority in support of its irrelevant proposition—*Ditmore v Michalik*, 244 Mich App 569, 577; 625 NW2d 462 (2001)—utterly refutes the majority's position. In *Ditmore*, defendants sought to invoke collateral estoppel, claiming that a prior case brought by the plaintiffs involved the same issue as the case then before the court. In the earlier case, the plaintiffs sought a declaration that their neighbors had no rights in a certain parcel of land. We held that the record revealed "no indication that the trial court ever resolved the issue whether" the neighbors "had any claim or right" in the *plaintiffs'* land. *Id*. at 578.

*Ditmore* teaches that courts must scrutinize the prior and present claims with great care to determine whether the issues presented are truly identical. The majority fails to do so, holding that a ruling on an issue relevant only to Jerome's malicious prosecution claim precludes a different claim presenting entirely different issues. The majority is oblivious to the relevant facts: the law governing the two claims (malicious prosecution and gross negligence) is different, the legal and factual issues involved are different, and the probable cause question decided by the federal court is distinct from the proximate cause issue presented here.[4]

Rather, the obvious federal corollary to Jerome's gross negligence theory is the *Brady* claim. Both the federal *Brady* claim and the state law gross negligence claim are predicated on Crum's failure to turn over the videotape. The critical distinction for collateral estoppel purposes is that the Sixth Circuit did *not* dispose of Jerome's *Brady* claim because Jerome failed to prove that he had suffered *any* injuries or damages. The Sixth Circuit applied its precedent to hold that a favorable resolution of a plaintiff's criminal trial nixes a federal *Brady* claim because a favorable trial result means that a plaintiff has not sustained a *constitutional* injury. That finding is the only finding to which collateral estoppel applies. And that finding is not relevant to

---

[4] As Wright & Miller, Defining the Issue Precluded, 18 Fed Prac & Proc Juris § 4417 (3d ed), explains:

> Courts have readily perceived that for purposes of preclusion, "[i]ssues are not identical if the second action involves application of a different legal standard, even though the factual setting of both suits be the same." In many cases the differences in the legal standards are apparent and easily defeat claims of preclusion, particularly when new statutes have been adopted, when different plaintiffs may enjoy different rights, or when different choice-of-law standards apply. In other cases, careful examination has shown that different legal standards are masquerading behind similar legal labels, so that preclusion is again inappropriate. At times it may be possible to question the results of individual decisions, but the method of inquiry seems to be well understood. And of course similar legal labels may in fact present identical issues.

Jerome's gross negligence claim because it has nothing to do with proximate causation in his gross negligence action.[5]

## III. CAUSATION

The majority's fallback position is that no evidence supports that Crum's failure to turn over the videotape was "a cause, let alone the proximate cause," of his damages. According to the majority, "any suggestion that the prosecution would have dropped the case against plaintiff sooner if it had been aware of the tape earlier is to engage in impermissible speculation." This alternative holding reflects a misunderstanding of basic evidentiary and causation principles. It also ignores the rules governing summary disposition analysis.

When considering a motion brought under MCR 2.116(C)(10), a trial court "must review the record evidence, make all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists, giving the nonmoving party the benefit of reasonable doubt." *Bertrand v Alan Ford, Inc*, 449 Mich 606, 617-618; 537 NW2d 185 (1995). As appellate judges, we must engage in precisely the same process. Specifically, we "must [also] make all reasonable inferences in the nonmoving party's favor." *Id*. And when the record leaves open an issue on which reasonable minds might differ, a genuine issue of material fact exists that precludes summary disposition. *West v General Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

The majority declares that as a matter of law, Jerome's causation proofs amount to speculation, as "there are a host of possible reasons not related to the late production of the videotape why the prosecution could have decided to forgo a second trial, including that the witnesses *perhaps* testified in an unexpected way at the first trial or that the complainant *perhaps* simply decided that she was not going to testify or cooperate any more after having already been subjected to several interviews and having already testified in court twice." (Emphases added.)

Perhaps.

The majority has done a commendable job at conjuring some speculative refutations of proximate cause. No evidence of record supports any of them; they are entirely made-up. Perhaps defense counsel might offer some evidence supporting them at trial, and perhaps a jury would see it the majority's way. But the majority has constructed a proximate cause defense

---

[5] The legal principle driving the Sixth Circuit's dismissal of Jerome's *Brady* claim is that the only injury relevant to a § 1983 claim is a *constitutional* injury. *Brady* concerns the right to a fair trial. "*Brady*'s ultimate concern [is] ensuring that criminal defendants receive a fundamentally fair trial." *Moldowan v City of Warren*, 578 F3d 351, 378 (CA 6, 2009) (cleaned up). Therefore, "liability for a *Brady* violation only exists when evidence sufficient to " 'put the whole case in such a different light as to undermine confidence in the verdict' " is improperly withheld. *Johnson v Mitchell*, 585 F3d 923, 933 (CA 6, 2009), quoting *Kyles v Whitley*, 514 US 419, 435; 115 S Ct 1555; 131 L Ed 2d 490 (1995). That is why success on a federal *Brady* claim depends on a showing of "a reasonable probability that had the evidence been timely disclosed to the defense the outcome would have been different." *Snow v Nelson*, 634 Fed Appx 151, 156 (CA 6, 2015) (cleaned up). Translated to the language of tort law, this means that the only injury for which a *Brady* claim can compensate is that of an unfair trial.

from thin air and more importantly, it has utterly failed to view the evidence from the plaintiff's perspective.

Jerome has advanced a proximate cause argument that hinges on actual facts, not "perhaps." Both direct and circumstantial evidence supply the foundation for a reasonable, nonspeculative inference that had the videotape been disclosed sooner, Jerome would have avoided a prolonged incarceration and a trial. I turn to that evidence.

A jury could readily decide that Crum bore a continuing obligation to locate and turn over the videotape as the case against Jerome made its way through the system. It naturally follows that Crum's gross negligence foreseeably led to Jerome's inability to mount a compelling defense, and to the prosecution's inability to accurately evaluate the strengths and weaknesses of its case. Day after day, month after month passed while a key piece of exculpatory evidence remained concealed and Jerome remained jailed. The tape's revelation dramatically and quickly turned the parties' positions upside down. After the prosecuting attorney admitted to Judge Nichols that the tape was highly relevant to the defense and a mistrial necessary, Jerome's bond was promptly reduced from $500,000 to $10,000, with 10% to be posted. And 16 days later, the prosecution abandoned the case.

A mere coincidence? I think not. A "speculative" connection between the tape and the abrupt *nolle prosequi* decision? Hardly. Rather, reasonable inferences arising from the actual case facts support that Jerome created a jury-submissible issue of causation.

Causation in a negligence action requires proof of both cause in fact and proximate cause. *Reeves v Kmart Corp*, 229 Mich App 466, 479; 582 NW2d 841 (1998). Cause in fact "generally requires showing that 'but for' the defendant's actions, the plaintiff's injury would not have occurred." *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). Proximate cause involves an examination of the foreseeability of consequences, and a determination whether a defendant should be held legally responsible for those consequences. *Id*. at 163. Normally, the issue of causation belongs to the jury. *Reeves*, 229 Mich App at 480.

When a motion for summary disposition challenges causation under to subrule (C)(10), "the court's task is to review the record evidence, and all reasonable inferences therefrom, and decide whether a genuine issue of any material fact exists to warrant a trial." *Skinner*, 445 Mich at 161. "[I]f there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence." *Kaminski v Grand Trunk Western R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956) (cleaned up).

These general causation principles apply in a gross negligence setting, despite that the plaintiff must prove that a defendant's gross negligence was "the" proximate cause of his injuries and damages. MCL 691.1407(2)(c). The evidence substantiates that Crum's failure to bring the videotape to the prosecutor's attention at some point before the trial constituted a factual cause of Jerome's lengthy stay in jail. *Ray* dictates that the next question is whether Crum's conduct was also *the* proximate cause of Jerome's alleged damages. That determination hinges on "whether it

was foreseeable that the defendant's conduct could result in the harm to the victim." *Ray*, 501 Mich at 65. The Supreme Court emphasized in *Ray* that

> [d]etermining whether an actor's conduct was "the proximate cause" under the GTLA does not involve a weighing of factual causes. Instead, so long as the defendant is a factual cause of the plaintiff's injuries, then the court should address legal causation by assessing foreseeability and whether the defendant's conduct was *the* proximate cause. [*Id*. at 74 (emphasis in original).]

The majority avoids this analysis, likely because engaging in it inevitably points to a conclusion that reasonable minds can differ. Was the withholding of the videotape the foreseeable cause of Jerome's damages? A jury could see it that way, given the cascade of events that transpired immediately after it was produced. A jury would also be charged with determining whether Crum's grossly negligent failure to timely produce the videotape was "the" proximate cause of Jerome's damages. See *id*. at 76. At this point, the majority's "perhaps" conjectures might come into play, assuming the defense placed in evidence some factual predicate for them. But we are not there yet. Rather, our job is to evaluate the evidence through Jerome's eyes. Viewed properly, the evidence points to a reasonable conclusion that Crum's failure to timely produce the videotape was "the" proximate cause of Jerome's prolonged incarceration.

## IV. SUMMARY

The majority applies collateral estoppel to a proximate causation question that was neither litigated in the federal court nor determined by the Sixth Circuit. Instead the majority lifts various comments from the Sixth Circuit opinion, devoid of their context, and concludes that they establish collateral estoppel. The majority's approach flies in the face of the rule that we must strictly apply collateral estoppel principles where issues are identical, and not merely similar. There is no identity of issues here. In fact, when examined contextually and against the caselaw backdrop, there is not even any similarity. The majority compounds this error by invoking an alternative ground for affirmance rooted in proximate cause. Once again, however, the majority skips over the facts, turns a blind eye to controlling legal principle, and settles on an answer it favors.

I would reverse the trial court's grant of summary disposition regarding gross negligence, and remand for further proceedings.

/s/ Elizabeth L. Gleicher